TJERNSTROM v. FORD MOTOR CO.

1. WORKMEN'S COMPENSATION—DECEASED'S FELLOW WORKER—
CREDIBILITY.
   Testimony of deceased employee's fellow worker *held*, not enti-
   tled to credence where upon eight different examinations either
   by counsel or deputy commissioner as to how the fatal accident
   happened his testimony was apparently incomprehensible.

2. SAME—STATEMENTS BY DECEASED EMPLOYEE.
   Testimony as to statements by employee after accident as to
   manner in which accident happened would be inadmissible in
   dependents' proceeding to recover compensation for his death
   which followed five days after accident.

3. SAME—ABDOMINAL INJURY—TOE INJURY—REASONABLE INFER-
ENCES—PRIMA FACIE CASE.
   In dependents' proceeding to recover compensation for acciden-
   tal death of employee, a structural iron worker, where direct
   testimony shows an accident did happen to him in which his
   large toe was crushed, that he was engaged in work of some
   danger and peril in assisting a fellow worker in hanging a
   50-pound chain falls to a cable sling above him, that deceased
   was then taken home with a crushed toe and a large swollen
   bruise on his abdomen, was suffering great pain in his stom-
   ach, bent over and unable to stand up straight, threw up blood
   and died five days later of ruptured appendix and peritonitis
   which could have been caused by a direct blow, a reasonable
   inference could be drawn that the abdominal injuries resulted
   from his employment and made a *prima facie* case for compen-
   sation.

4. EVIDENCE—FACTS.
   Although the term "evidence" is sometimes used as synonymous
   with the term "facts" the terms are really not synonymous,
   as "evidence" is the means from which an inference may logi-
   cally be drawn as to the existence of a fact.

5. Workmen's Compensation—Finding of Department Conclusive.

> Fact that department of labor and industry gave erroneous reasons for its finding that death of plaintiffs' decedent arose from a compensable injury does not warrant a reversal of its finding where reasonable inferences could be drawn from the proofs that plaintiffs' decedent was injured during the course of his employment and that the injury arose out of his employment, the findings of the department being conclusive upon the Supreme Court (2 Comp. Laws 1929, § 8451).

Wiest, C. J., and Sharpe, J., dissenting.

Appeal from Department of Labor and Industry. Submitted April 13, 1938. (Docket No. 99, Calendar No. 39,822.) Decided June 30, 1938. Rehearing denied October 3, 1938.

Mary Tjernstrom and daughter presented their claim against Ford Motor Company, employer, for an injury sustained in defendant's employ causing death of plaintiffs' decedent. Award to plaintiffs. Defendant appeals. Affirmed.

*Frank Schwartz,* for plaintiffs.

*E. C. Starkey* and *F. A. Nolan,* for defendant.

McAllister, J. Plaintiffs' decedent, Elmer Tjernstrom, a structural iron worker at the Ford Motor Company, left his home for work at defendant's factory on the morning of August 12, 1936, a happy, able-bodied man in good physical health.

On the evening of the same day he was brought back to his home from the factory in a car driven by another man. When he arrived home, decedent's large toe of the right foot was crushed, he was suffering terrific pain in his stomach, he was all bent over and couldn't straighten up. His abdomen was

swollen and had on it a red bruise four inches long and two inches wide which turned black and blue the next day. He immediately went to bed. The next morning he threw up a cupful of blood. He was later taken to the Ford Hospital and died five days after the accident.

There was no testimony as to the exact cause of death but the Ford Motor Company in its "report of compensable accident" stated that decedent had died "from a ruptured appendix—peritonitis" and the parties in this proceeding have apparently assumed such was the cause of death. Prior to the day in question, decedent had been a healthy man, never had complained of any attacks in his stomach, and there was testimony that for at least 18 years he had never been confined to his bed because of illness.

Dr. Foster, a physician experienced in industrial surgery, testified that a bruise such as was testified to by witnesses for plaintiffs, could come from a direct blow and would indicate direct violence. Other medical testimony was introduced to the effect that a ruptured appendix could be caused by a blow on the abdomen.

On the day in question, an accident occurred at defendant's factory in which plaintiffs' decedent was injured, but the exact details and circumstances of the accident are confused. The only witness to the affair was one McGillis, a workman testifying for the defense, who was examined eight different times either by counsel or by the deputy commissioner as to how the accident happened. In many important particulars, especially in describing the occurrence of the accident, his testimony was apparently incomprehensible not only to counsel for both parties but to the deputy commissioner.

It appears that at the time of the accident, Mc-Gillis was attempting to hang a "chain falls" to a cable sling above him.  A "chain falls" is a heavy metal block with wheels that have pulley chains on them weighing about 50 pounds in all.  In order to reach the cable sling, McGillis first stepped up on a hand rail about three feet above the cement floor of the factory.  It was necessary to balance himself on this hand rail.  From the rail he stepped on to a "coke bar" about two feet above the rail.  The testimony is very confused as to the structure of the "coke bar."  It was made of frame steel about four feet long and two feet wide and weighs approximately 200 pounds.  It was not clear as to whether it was attached to the floor or wall.  It balanced in some way and "rocked" either when operated or when additional weight was placed on the bar.  McGillis stepped onto the "coke bar."  Deceased in order to help him keep his balance, stood up on the hand rail, where it was necessary to balance himself, and placed his hands on McGillis to keep him from falling.  McGillis was some two feet above deceased who was holding him at arm's length.  While McGillis was lifting the heavy "chain falls" above him at about the level of his head, the additional weight of McGillis and the "chain falls" which he was holding caused one side of the "coke bar" to "rock down" about two feet and crush the big toe of deceased between the bar and the rail.  When his toe was caught and crushed, the heavy, two foot wide "coke bar" was between McGillis and deceased. Deceased told McGillis to get off the "coke bar," which he did.  Why McGillis did not slip or fall or lose his balance or drop the "chain falls" while he was balancing on the "coke bar," which rocked down under his weight a distance of two feet on an

angle, is difficult to understand, especially in view of the fact that his hands were engaged in holding a metal block weighing 50 pounds at the level of his head. It is incredible in the light of these circumstances that McGillis could have seen how the accident happened and how deceased was injured, inasmuch as deceased was about two feet below him when the bar rocked down. He, however, testified that the "coke bar" when it swung down between them only touched plaintiff on the toe. At one place he testified: "I didn't see it touch him at all, only on the toe." Two witnesses, however, testified that when McGillis came to see the family of deceased on the day after the funeral, he said that deceased was balancing him and he didn't see what happened, "he didn't see him get hurt and he don't know how it happened. * * * He didn't even know what had happened until afterwards, until after he had gotten down."

The testimony of these witnesses was not rebutted. No credence can be given to the testimony of McGillis as to the manner in which deceased was injured. The lips of deceased are closed by death. Any statements made by him in this case after the accident and before his death as to the manner in which it happened would be inadmissible.

All that is certain from direct testimony is that an accident did happen during the course of the employment of deceased and that in such accident decedent's large toe was crushed. The testimony further discloses that at the time of this accident deceased was engaged in the work of some danger and peril; that he was balancing himself on a hand rail above a concrete floor, and supporting with his hands a fellow employee who was balancing on a heavy swinging bar that "rocked down" between them;

that after the accident decedent was taken home with a crushed toe and a large swollen red bruise on his abdomen, which in all probability was caused by a direct blow; and that he was suffering great pain in his stomach and was bent over so that he could not stand up straight. He threw up blood and died a few days later. According to the report filed by defendant, decedent's death was caused by "a ruptured appendix — peritonitis." Medical testimony was to the effect that such a condition could have been caused by a blow to the abdomen.

In *Woodburn* v. *Oliver Machinery Company,* 257 Mich. 109, a night watchman left home without any bruises upon him and went to the factory where he was employed. He failed to punch the clock and this was noted in a telegraph office, whereupon a man was sent out to investigate. On arriving at the factory the investigator found the watchman sitting on the stairs; his lantern was upright and burning. An ambulance was called and the watchman taken to his home. When he arrived home it was found that there was a bruise and swelling on his head between the temple and the ear. There was proof that this bruise might in view of the physical condition of the deceased have caused his death. Under these circumstances, this court said:

"No one saw Woodburn fall. All we have is that he was free from injury when he left the house, and injured when he came back from his place of employment. The fact he left home uninjured, went to defendant's factory, was engaged in his usual and ordinary occupation therein, was found at the factory at the foot of the stairs, in the line of travel where the discharge of his duties usually and ordinarily took him, severely injured about the head, from which injuries it is probable he died, is, we

think, sufficient to raise a presumption the injuries to deceased arose out of and in the course of his employment.''

It might appear from the foregoing excerpt of the opinion in *Woodburn* v. *Oliver Machinery Co.*, *supra,* that when Woodburn was found in the factory, the bruises and injuries were then discovered. The record in the case, however, discloses that when Woodburn was found sitting on the stairs, no bruises were discovered or mentioned by deceased. When he was brought home, his wife did not discover until he had been in bed for a half hour that there was a bruise on his head. Nevertheless the court held that there was a presumption that the injuries arose out of and in the course of his employment.

In the case before us, there were no eyewitnesses who could testify regarding the injury to the abdomen of plaintiffs' decedent. There was a reasonable inference to be drawn that the injuries to the deceased's abdomen resulted from his employment. He entered his employment on the day in question a strong, healthy, able-bodied man. He was removed from the place of employment in an automobile by a third party and when he arrived home he was bent over, suffering great pain and the injury was immediately manifested when his clothes were removed and the large red bruise was seen on his body. While the term ''evidence'' is sometimes used as synonymous with the term ''facts'' they are not really synonymous. Evidence, broadly defined, is the means from which an inference may logically be drawn as to the existence of a fact. 22 C. J. p. 65. We cannot say that there was no evidence to sustain the award of the department on behalf of plaintiffs, for the proofs made a *prima facie* case.

The fact that erroneous reasons were given for its findings by the department of labor and industry

should not warrant a reversal of its findings. If reasonable inferences could be drawn from the proofs that plaintiffs' decedent was injured during the course of his employment and that the injury arose out of his employment, the findings of the department are conclusive on this court.* Such conclusions could properly be found from reasonable inferences drawn from the evidence.

The award of the department of labor and industry is affirmed, with costs to plaintiffs.

BUTZEL, BUSHNELL, POTTER, CHANDLER, and NORTH, JJ., concurred with McALLISTER, J.

WIEST, C. J. (*dissenting*). I cannot concur in this opinion.

The report of the accident stated:

"This man died * * * at Henry Ford Hospital from a ruptured appendix—peritonitis. We have no history of any injury which could have caused the man's death."

The only known injury was to his toe and that did not cause a ruptured appendix.

The department held the burden on defendant to produce hospital records, and—

"The defendant having produced no medical proofs of the condition of this man, and what caused his death, this department must find from the testimony submitted, and the undisputed facts surrounding the case, that plaintiffs have met the burden of proof, and that Elmer Tjernstrom died on August 17, 1936, as the result of injuries suffered while in the employ of the Ford Motor Company on August 12, 1936."

_____

* See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—RE-PORTER.

It is claimed that when the workman returned home there was a bruise or mark on his abdomen and this may have had something to do with the ruptured appendix. Where he received that injury is not disclosed.

We said in *Wiio* v. *Quincy Mining Co.*, 217 Mich. 476:

"Counsel argues that it is shown inferentially by the testimony that claimant's husband was well and made no complaint before he went away from from home on the morning of July 3d, and that when he returned in the evening he exhibited the cut or scratch. From these facts counsel concludes that, as he lived so close to his work, he must have received the injury in the course of his employment. The proofs show that Mr. Wiio did chores about his home. He may have received the cut or scratch while doing his chores. He may have received it prior to July 3d and it was unnoticed by plaintiff. He may have received it in the mine during the dinner hour. But whatever the fact is, the duty was upon the plaintiff to make competent proof of the fact that he received his injury from an accident growing out of and in the course of his employment."

See, also, *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130. In that case a box injured a workman's toe and there was no evidence of any injury to his body or legs. That evening a redness on his leg was found. The testimony disclosed that the workman had always before this been a strong, healthy man and never been sick. We set the award aside.

In the case at bar, the department stated:

"Therefore, when the defendant makes definite statements in reports filed with this department, as to the cause of death, and then withholds from the

department the records and proofs in their posses-
sion and under their direct control that would either
prove or disprove such statement we must apply the
decision of the Michigan Supreme Court, as set out
in *Brandt* v. *C. F. Smith & Co.*, 242 Mich. 217: 'Fail-
ure to produce evidence within a party's control
raises the presumption that, if produced, it would
operate against him.' ''

That was misapplication of the rule applied in
that case.

The burden was not upon the defendant to estab-
lish the cause of death.

The award should be vacated, with costs to de-
fendant.

SHARPE, J. (*dissenting*). I concur in reversal.
The case of *Woodburn* v. *Oliver Machinery Co.*, 257
Mich. 109, cited by Mr. Justice McALLISTER is not
controlling. In that case there were no eyewitnesses
to the accident, but the facts therein raised a pre-
sumption that the injury to deceased arose out of
and in the course of his employment. In the case
at bar it is undisputed that on August 12, 1936, the
deceased left home a normal healthy man; that he
suffered an accidental injury to his toe; and that the
cause of death was from a ruptured appendix—peri-
tonitis.

The testimony of Albert McGillis, a witness pro-
duced by the defendant company, is to the effect that
the only injury suffered by deceased was the toe
injury. Such evidence dispels the presumption re-
lied upon by plaintiff. It is elementary that the
burden of establishing a claim for compensation
rests upon those seeking the award. Plaintiff has
not met the burden of proof and the award should be
vacated, with costs to defendant.