HARRIS v CITY OF DETROIT

Docket No. 48132. Submitted June 23, 1980, at Detroit.—Decided
    January 22, 1981. Leave to appeal applied for.

    James Harris injured his back on February 1, 1965, during the
    course of his employment as a rubbish collector with the City of
    Detroit. Following an operation for a herniated disc, plaintiff
    returned to work for one day, but found that he could not
    perform his duties. Plaintiff received workers' disability com-
    pensation benefits for the statutory 500-week period, the last
    payment being September 2, 1974.

    On October 8, 1974, plaintiff petitioned the Bureau of Work-
men's Compensation alleging total and permanent disability
arising out of the 1965 injury. Plaintiff sought permanent and
total disability benefits from the City of Detroit with differen-
tial benefits to be paid by the Second Injury Fund. The hearing
referee found that plaintiff was totally and permanently dis-
abled by reason of the 1965 injury, ordered the City of Detroit
to pay benefits from October 8, 1972, with credit for benefits
already paid, and ordered the Second Injury Fund to pay
differential benefits from the date of the doctor's examination
establishing the total and permanent disability, the same begin-
ning January 24, 1975. On appeal to the Worker's Compensa-
tion Appeal Board, defendants argued that permanent and
total disability had not been shown, while plaintiff argued that
the differential benefits should be payable from the date of
injury in 1965. The Appeal Board affirmed the referee's finding
of permanent and total disability but ordered that the City of
Detroit pay the permanent and total disability benefits from
September 3, 1974, the day after the expiration of the prior
benefits, and ordered that the Second Injury Fund pay differen-
tial benefits from August 1, 1974, that date being 30 days prior
to the termination of the prior benefits.

    Plaintiff and both defendants sought leave to appeal in the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 609, 820.
  82 Am Jur 2d, Workmen's Compensation § 631.
[2] 5 Am Jur 2d, Appeal and Error § 548.
  82 Am Jur 2d, Workmen's Compensation § 597.

Court of Appeals by separate applications for leave to appeal. The Court of Appeals vacated the order of the Appeal Board and remanded the matter by reason of a failure of a majority of the Appeal Board to join the controlling opinion. (Docket Nos. 78-2943, 78-2944, 78-3304, unpublished order of October 20, 1978). On remand, a majority of the Appeal Board adopted the prior controlling opinion. Plaintiff sought leave to appeal from the redetermination. The Court of Appeals denied leave to appeal (Docket No. 43930, unpublished order of May 31, 1979). Plaintiff sought leave to appeal in the Supreme Court which, in lieu of leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. See 407 Mich 906 (1979). On appeal, plaintiff argues that the Appeal Board should have found February 1, 1965, as being the date on which he became permanently and totally disabled and should have ordered differential benefits from that date rather than from August 1, 1974. Defendant Second Injury Fund argues that, since there was evidence supporting the Appeal Board's determination as to the date of total and permanent disability, that factual determination of the Appeal Board is not subject to review by the Court of Apepals. *Held:*

The findings of fact by the Worker's Compensation Appeal Board are not subject to review by the Court of Appeals except to determine whether there is any evidence to support those findings.

Affirmed.

A. C. MILLER, J., dissented. He would hold that the opinion of the Appeal Board indicates that arbitrary decisions were made by the Appeal Board in a transparent attempt by the majority of that body to avoid coming to grips with the real issue presented to it. He would hold that under such circumstances the Court of Appeals need not accept the findings of the Appeal Board even though there is some evidence to support those findings of fact. He would remand.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT.

Findings of fact by the Worker's Compensation Appeal Board are not subject to review by the Court of Appeals except to determine whether there is any evidence to support the board's findings.

2. Workers' Compensation — Appeal — Findings of Fact —
   Fraud.

   Findings of fact by the Worker's Compensation Appeal Board,
   while normally not reviewable by the Court of Appeals if there
   is evidence to support those findings, may be reviewed where
   the Court finds an apparent breakdown in the system which is
   tantamount to fraud; arbitrary determinations by the Workers'
   Compensation Appeal Board made in a transparent attempt to
   avoid coming to grips with the issue presented to the board
   mandate remand to the Appeal Board for further proceedings.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Jeanne Nunn* and *Granner S. Ries*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for defendant Second Injury Fund.

Before: J. H. Gillis, P.J., and V. J. Brennan and A. C. Miller,* JJ.

J. H. Gillis, P.J. We agree with many of the comments made by our colleague. Nevertheless, we are mindful of the following statement taken from *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160, 162-163; 79 NW2d 457 (1956):

" 'It may not be necessary to repeat what we have so frequently said that this Court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award. The evidence may not be direct; it may be circumstantial. The board not only passes on the credibility of witnesses, but draws its inferences from the circumstances and the facts which it finds established. We may reverse awards for a failure of evidence to support them, but we are not the triers of the facts. With this view in mind, we approach the consideration of this

---

* Circuit judge, sitting on the Court of Appeals by assignment.

case.' *[Meyers v Michigan Central R Co,* 199 Mich 134, 137-138; 165 NW 703 (1917)].

"Our jurisdiction, invoked upon issuance and return of certiorari to the workmen's compensation department, is markedly limited. The writ brings us questions of law only. It does not permit scale-weight of evidence and inference here, as on appeals from circuit court judgments, to determine whether administrative findings of fact offend rules governing clear weight and preponderance. Our obligation is to accept, without question, findings that are certified here if there be any evidence whatever to sustain those findings, regardless of thought or suggestion addressed to improbability thereof. Furthermore, and when we employ as above the word 'evidence,' synonymity with the word 'facts' is not intended. 'Evidence' is really the means by which inferences may logically be drawn as to the existence of facts *(Tjernstrom v Ford Motor Co,* 285 Mich 450, 456 [280 NW 823 (1938)])."

With this in mind, we affirm.

V. J. BRENNAN, J., concurred.

A. C. MILLER, J. *(dissenting).* In 1975, "a rather powerful individual, [who] had calluses on his hands * * * and no muscle atrophy [in] either lower limb" was found by a hearing referee to have been totally and permanently disabled for the prior ten years. The referee's award of benefits for total and permanent disability was affirmed with modifications by the Workers' Compensation Appeal Board.

Plaintiff, James Harris, was employed by the City of Detroit in 1959 as a rubbish collector, and on February 1, 1965, he injured his back on the job. After an operation for a herniated disc, he returned to work but found that he could not perform his duties. He was paid benefits for the prior maximum period of 500 weeks.

On October 8, 1974, plaintiff petitioned for total and permanent disability benefits and named his employer and the Second Injury Fund. He claimed to be totally and permanently disabled[1] by reason of the loss of the industrial use of both legs. The referee apparently wanted to award "something", so he ordered the employer to pay $45 per week from October 8, 1972, with certain credits. The Second Injury Fund was ordered to pay differential benefits from January 24, 1975, the date plaintiff was examined by a physician.

The Workers' Compensation Appeal Board split as widely as possible. (The record even arrived at this Court with only two members adopting the controlling opinion and was remanded for that reason. A member who previously had concurred in result only joined in the controlling opinion, stating: "Whatever reservations I had at the time of original review are not now apparent to me".) The Appeal Board changed the date of the benefits from October 8, 1972, to September 3, 1974. If plaintiff lost the use of his legs it had to be the date of the injury, February 1, 1965, or the date of the surgery two weeks later. As it is, the record manifests the desire to award something without benefit of logic.

The Second injury Fund was created September 1, 1965, and benefits, if awarded at all, must start on that date. 1965 PA 44, § 9. This Court's role is not to review factual determinations of the Workers' Compensation Appeal Board if there is evidence to support the findings (Const 1963, art 6, § 28, MCL 418.861; MSA 17.237[861], *Coates v Continental Motors Corp,* 373 Mich 461; 130 NW2d 34 [1964]), but no tribunal's hands are tied in the face of an apparent breakdown of the system

---

[1] MCL 418.361(2)(g); MSA 17.237(361)(2)(g)

tantamount to fraud. Indeed, it is said that fraud vitiates everything.

In this case, not only do the calluses appear after ten years, but plaintiff is found to be "powerful" by one doctor and "very strong" by another. No muscle atrophy was noted. He was found to walk with a normal gait and was able to stand on his heels and toes and squat and rise unassisted. His posture was found to be good, and he had 95% range for forward bending, coming within four inches of the floor. His backward bending and lateral bending to both sides was found within normal limits. A treating physician conceded that many of his findings were normal and that the complaints were "bizarre relative to upper extremities that had no basis in physical pathology".

Plaintiff's bizarre and exaggerated complaints included both "numbness" and "sharp pain" in the feet and legs as well as "pain (that) radiated up the back to the neck and head". He had "strong muscles in his legs".

Consulting physicians felt that plaintiff should be protected from heavy lifting. Plaintiff's own treating physician was not called to testify nor was any explanation offered. Plaintiff was not able to say what medication he was taking.

A "compromise verdict" is apparent and, as stated by one member, "transparent":

"Placement of permanent and total disability on either of these dates would give plaintiff a huge award. Both the referee and the Chairman made a transparent attempt to dodge such an award by failing to come to grips with the issue of the correct date for permanent and total disability; *each selected an arbitrary date having no relation to the record.*" (Emphasis added.)

Under the circumstances, rather than correct

the date of inception of benefits, the matter should be reversed so that an appropriate tribunal can come to grips with the real issue and hopefully secure additional evidence.

I would reverse and remand for further proceedings consistent with this opinion.