## JOHNSON *v.* VIBRADAMP CORPORATION.

1. WORKMEN'S COMPENSATION — STATUTES — INTERPRETATION — DIS-
   ABILITY—LIABILITY FOR BENEFITS.
   An employee is entitled to workmen's compensation benefits for
   a disabling disease only when such is due to causes and con-
   ditions which are characteristic of and peculiar to the business
   of the employer and arises out of and in the course of the
   employment (CL 1948, § 417.1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation §§ 209–213.
[2] 58 Am Jur, Workmen's Compensation §§ 209, 532, 535.
[3] 58 Am Jur, Workmen's Compensation §§ 209, 210, 255.
[4] 58 Am Jur, Workmen's Compensation §§ 209, 255, 436, 437, 450,
    531, 532, 534.
[5] 58 Am Jur, Workmen's Compensation § 543.

2. Same—Functional Overlay—Proximate Cause.

Finding of workmen's compensation appeal board that functional overlay, arising as the result of employer's failure to return partially disabled employee to work, was a disablement entitling employee to workmen's compensation benefits *held*, unsupported by record, where claimant was never subject to the conditions resulting in such disability during the course of his employment, and the record not only fails to establish · such disability to be characteristic of and peculiar to the employer's business, but clearly establishes that it was caused by unemployment (CL 1948, §§ 413.12, 417.1).

3. Same—Compensable Hernia.

A hernia, to be compensable under the workmen's compensation act, must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer (CL 1948, § 417.1, subd [c]).

4. Same—Hernia—Finding of Workmen's Compensation Appeal Board.

Finding of workmen's compensation appeal board that claimant sustained a hernia attributable to his employment *held*, error, where claimant had no hernia when he last worked for his employer, the mere fact that he had a hernia several months later, having done no work in the interim, being insufficient to establish liability by the employer under the statute (CL 1948, § 417.1 subd [c]).

5. Costs—Workmen's Compensation—Appeal and Error.

No costs allowed upon the reversal of an award granting disability benefits to incapacitated employee.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 February 8, 1967, at Detroit. (Docket No. 1,767.) Decided May 23, 1967. Leave to appeal granted August 15, 1967. See 379 Mich 275, 381 Mich 388.

Claim by Gearold Johnson for workmen's compensation benefits against Vibradamp Corporation, a Michigan corporation, and Travelers Insurance Company, a Connecticut corporation, its insurer, as well as the successors to the employer corporation, including Presstite Division of Inter-Chemical Cor-

poration, an Ohio corporation, and Liberty Mutual Insurance Company, a Massachusetts corporation, its insurer. The hearing referee entered an award for total disability benefits against Vibradamp and Travelers, and an award for medical expenses against Presstite and Liberty Mutual, leaving open the question of the liability of the latter two defendants for disability benefits upon proper termination of the liability of Vibradamp and Travelers. Plaintiff and defendants Vibradamp and Travelers appealed. The Workmen's Compensation Appeal Board affirmed, with modification. Defendants Presstite and Liberty Mutual appeal. Reversed.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Troff, Lilly, Bonow, Piatt & File (John D. Doyle,* of counsel), for defendants Presstite and Liberty Mutual.

QUINN, J. On leave granted, Presstite Division of Inter-Chemical Corporation and Liberty Mutual Insurance Company (hereinafter referred to as defendants) appeal from a decision of the workmen's compensation appeal board and question that decision with respect to its findings that a functional overlay[1] was a compensable disability and that plaintiff suffered a hernia while in the employ of Presstite arising out of and in the course of such employment.

In 1946, plaintiff commenced work for Vibradamp Corp., and August 17, 1956, he suffered a back injury arising out of and in the course of his employment. Travelers Insurance Co. was Vibradamp's work-

---

[1] Physicians often use this term as an evasive tactic to avoid any suggestion to the patient (or his relatives), that they think the patient's complaints are psychogenic in origin. 3 Gray's Attorneys' Textbook of Medicine (3d ed), § 80.52(4).

men's compensation insurance carrier. Plaintiff underwent laminectomies May 16, 1958, and January 8, 1959, and when he still experienced back trouble, a back brace was prescribed and used and plaintiff was able to continue his employment. However, he continued to see Dr. Stolberg who performed the operations and prescribed the back brace. In February 1962, plaintiff suffered a heart attack at home and was hospitalized 51 days. He returned to work in September 1962, contracted pneumonia during the first week of his return and was off work another month. Plaintiff's bid for employment as a punch press operator was accepted by his employer and he was assigned to that work October 17, 1962. This work paid a little less than his former job, but it was lighter work. Plaintiff continued on this job until June 1963, when he suffered a light heart attack. He was hospitalized and off work until September 11, 1963. July 1, 1963, the last of several changes in the corporate organization and structure of plaintiff's employer occurred and Presstite became his employer and Liberty Mutual became its insurance carrier.

When plaintiff returned to work, he advised the personnel department he could no longer wear his back brace because of loss of weight, and an appointment was made for him to see Dr. Stolberg September 13, 1963. Plaintiff was given a return to work physical September 11, 1963, which was negative except for a relaxed left inguinal ring. It was recommended plaintiff return to work but with a restriction of not lifting more than 30 pounds.

The punch press operated by plaintiff produced permagum washers about the size of a one-half dollar and 3/8 inch thick. The operation consisted of obtaining a roll of material, which weighed up to 30 pounds, carrying it 25 feet to the machine, putting the roll on a spindle and threading the material into

the press.   The press was then started and the individual washers fell into a 5-gallon pail which was weighed and dumped in a carton when full.   The filled pail weighed from 10 to 30 pounds depending on the material used, but a filled carton weighed 37 pounds, and plaintiff was required to lift the carton and place it on a skid.   It took 8 to 10 minutes for a roll of material to go through the machine, and plaintiff repeated the above process 5 to 7 times per hour.

After working thus for one-half day without his brace, plaintiff's back began to hurt but he continued to work until noon of September 13th, when he returned to Dr. Stolberg.   The latter ordered plaintiff to cease work, hospitalized him and ordered a new brace for him.   After several days in the hospital, plaintiff developed a blood clot in his left leg and a pain in his chest.   In December, 1963, Dr. Stolberg released plaintiff for light work, and the doctor's testimony indicates that the then condition of plaintiff's back was comparable to its condition before plaintiff returned to work in September.   However, plaintiff has not worked since September 13, 1963, and there is evidence in the record indicating plaintiff's condition worsened in 1964 due to his anxiety over not being returned to work by Presstite after his doctor had released him for light work.   This is the functional overlay which the appeal board found to be the basis for disability benefits on the following reasoning:  the failure to return plaintiff to work caused the overlay as the result of which plaintiff suffered an aggravation of his back injury on and after January 14, 1964, which now prevents his recall to work, and although wage loss is chargeable to the 1956 injury, disability benefits are assessable for the aggravation of that injury on and after January 14, 1964, and are chargeable to defendants.

We do not believe this reasoning is legally supportable under the provisions of the statute involved. In pertinent part, CL 1948, § 417.1 (Stat Ann 1960 Rev § 17.220) provides:

"Whenever used in this act:

(a) * * * 'disability' means the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability.

(b) * * * 'disablement' means the event of becoming so disabled. * * *

(c) * * * 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment."

CL 1948, § 417.2 (Stat Ann 1960 Rev § 17.221) provides:

"The disablement of an employee resulting from such disease or disability shall be treated as the happening of a personal injury within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein."

Plaintiff was never before subjected to the conditions resulting in this disability, namely: functional overlay. The record fails to demonstrate that functional overlay is characteristic of and peculiar to employer's business, and rather than arising out of and in the course of employment, the functional overlay apparently arose from unemployment.[2] While our sympathies are with plaintiff and with what the appeal board attempted to do for him, we cannot ignore the law as written.

---

2 See, also, CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186).—
REPORTER.

As previously noted, the examination of September 11, 1963, disclosed that plaintiff had a relaxed left inguinal ring but no hernia. Plaintiff did not know he had a hernia until so advised by his attorney in the summer of 1964 following the latter's receipt of a medical report so indicating. Plaintiff's only testimony with respect to groin pain was "I had a little down there," but this is not related to his employment in September, 1963. Since he had no hernia when he started work in September, 1963, and he has not worked since then and now has a hernia, plaintiff says *a fortiori* the hernia was suffered during that period of employment. While such reasoning may satisfy principles of logic, it does not satisfy CL 1948, § 417.1, subd (c) (Stat Ann 1960 Rev § 17.220, subd [c]) which reads in part as follows:

"A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer."

See *Ash* v. *Great Lakes Greyhound Lines* (1953), 337 Mich 362, interpreting a prior similar provision.

The decision of the workmen's compensation appeal board is reversed on the questions involved in this appeal, but without costs.

LESINSKI, C. J., and BURNS, J., concurred.