WHITE *v.* REVERE COPPER & BRASS, INC.

Opinion of the Court

1. Administrative Law and Procedure—Due Process—Oral Argument—Before Administrative Tribunal.

Physical presence of all members of administrative tribunal at oral argument, unless required by statute, is not a fundamental requirement of a fair hearing before it, particularly when it is sitting in an appellate capacity.

2. Same—Due Process—Absent Member Participating in Decision.

A member of an administrative tribunal may participate in a decision even though he was not present at the time evidence was submitted or oral arguments made if the absent member considers the record on which decision was made.

3. Same—Due Process—Argument Before Majority of Appeal Board.

Absent statutory requirement that all members of administrative tribunal be present, where both parties are given the opportunity, and do present oral argument to a majority of such members, they are accorded due process.

4. Same—Workmen's Compensation Appeal Board—Decision—Appeal—Conclusiveness.

Decision by a majority of workmen's compensation appeal board (three members dissenting) that plaintiff did not give timely notice of alleged occupational disablement within 120 days

References for Points in Headnotes

[1, 3]  2 Am Jur 2d, Administrative Law §§ 434, 435, 546.
[2]  2 Am Jur 2d, Administrative Law § 435.
[4]  58 Am Jur, Workmen's Compensation §§ 483, 530.
[5]  2 Am Jur 2d, Administrative Law § 665.
[6, 7, 9]  58 Am Jur, Workmen's Compensation §§ 530–532.
[8]  58 Am Jur, Workmen's Compensation §§ 386, 530.
[10, 11]  58 Am Jur, Workmen's Compensation § 409.

after its occurrence as required by statute is conclusive, and in the absence of fraud is not subject to reversal by the Court of Appeals if it is supported by any evidence, since such board is the trier of facts in compensation cases and makes its own determination as to credibility of witnesses and the weight to be given to their testimony.

5. SAME—TIMELY NOTICE—QUESTION OF FACT.

The giving of timely and sufficient notice in an administrative proceeding is a question of fact and not a question of law.

6. SAME—WORKMEN'S COMPENSATION APPEAL BOARD—FINDINGS OF FACT—APPEAL—CONCLUSIVENESS.

Absent fraud, the finding of fact by the workmen's compensation appeal board that plaintiff did not give timely notice is conclusive upon the Court of Appeals if it is supported by any evidence.

7. SAME—WORKMEN'S COMPENSATION APPEAL BOARD—APPEAL—SCOPE OF REVIEW.

The Court of Appeals will not weigh the evidence or the arguments by the parties in a workmen's compensation case in support of the contentions presented before the referee and the appeal board, but will only ascertain if there is some evidence supporting its finding.

8. WORKMEN'S COMPENSATION—NOTICE OF OCCUPATIONAL DISABLEMENT—BASIS FOR COMPENSATION BENEFITS.

Finding by workmen's compensation appeal board that plaintiff failed to give timely notice of alleged occupational disablement and that there was nothing in record to support a finding that his inguinal hernia was recent in origin, arose out of and in the course of the employment, or was promptly reported to defendant *held,* sufficient to support finding that there was no basis for compensation benefits.

DISSENTING OPINION
LEVIN, J.

9. ADMINISTRATIVE LAW AND PROCEDURE—WORKMEN'S COMPENSATION APPEAL BOARD DECISION—APPEAL—CONCLUSIVENESS.

*Fact finding by the workmen's compensation appeal board is conclusive in the Court of Appeals if supported by any evidence.*

10. WORKMEN'S COMPENSATION—SEPARATE DISABILITIES—COMPENSA-
TION BENEFITS—STATUTE OF LIMITATIONS—KNOWLEDGE OF EM-
PLOYEE.

> *The disability of being unable to work in a fume-ridden atmos-
> phere, and the disability caused by emphysema disabling one
> from working in a clean atmosphere are separate and distinct
> disabilities, and the 120 days-statute of limitations begins to
> run as to each separately when the employee knows or has
> reason to know of the injury, disease or disability for which
> compensation is sought.*

11. SAME—DISABILITY—COMPENSATION BENEFITS.

> *Where there is no evidence to support finding of board that plain-
> tiff knew or had reason to believe that he had emphysema in
> 1958, when he was disabled from working in a fume-ridden at-
> mosphere, finding of workmen's compensation board that he
> was disabled by emphysema in 1958 and therefore had failed
> to give the required notice within 120 days of the 1958 dis-
> .ablement, would not preclude an award if he gave notice
> within 120 days of knowing or having reason to believe that
> he had become disabled by reason of the separate disease of em-
> physema; a new hearing therefore is warranted.*

Appeal from Workmen's Compensation Appeal
Board. Submitted February 7, 1968, at Detroit.
(Docket No. 2,876.) Decided October 24, 1968.
Leave to appeal granted March 19, 1969. 381 Mich
809.

Ivory White presented his claim against Revere
Copper and Brass, Inc., for compensation because
of disability from pulmonary emphysema and an
inguinal hernia. Benefits denied. Plaintiff appeals.
Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for
plaintiff.

*Clark, Klein, Winter, Parsons & Prewitt* (*David
P. Wood,* of counsel), for defendant.

McGregor, J. We are faced with an appeal from the workmen's compensation appeal board in the nature of certiorari, to determine whether or not a member of that board, who was not appointed to that board until after oral argument had been heard, may participate in the decision thereof, the plaintiff claiming that by such participation, he suffered a denial of due process. When the workmen's compensation appeal board decided the appeal of the defendant from the decision of the referee, a newly appointed member of that board participated in the decision, in effect casting the deciding vote overruling the referee's decision awarding plaintiff compensation benefits.

Physical presence at oral argument is not a fundamental requirement of a fair hearing before an administrative tribunal, unless statutorily required, particularly when the administrative tribunal is sitting in a reviewing or appellate capacity. A member of an administrative tribunal may participate in a decision even though he was not present at the time evidence was submitted or oral argument made, provided the absent member considers the record on which his decision is made. We must rest on the assumption that each board member has considered the evidence.

Plaintiff does not challenge the fairness of this proceeding in any respect, other than the question, raised for the first time before this Court, of the absence of one member of the appeal board from the oral argument. The procedure for consideration of cases on review by the appeal board is found in CL 1948, § 408.11 (Stat Ann 1968 Rev § 17.6[17]), as added by PA 1965, No 139 which reads, in part, as follows:

"Any matter pending on review may be assigned to 4 members of the board for disposition. The

composition of such panels shall be alternated so that each member of the board serves on panels with other members of the board with the frequency which is as substantially equal as possible. If the 4 members concur in the result it shall be final. If there is disagreement, the matter shall be reviewed by the full board and its decision shall be final."

The foregoing statutory pattern demonstrates that the legislature contemplated that cases on review might be assigned by the chairman of the appeal board for disposition by less than the entire membership of the appeal board. Panels of 4 members are authorized, but if the 4 members so assigned do not concur in the result, the "matter shall be reviewed by the full board and its decision shall be final." Where the 4 members of the appeal board panel do not concur, the matter must be submitted to the full board. Thus, the legislature contemplated that there would be cases in which all the members of the appeal board might be required to participate, even though they had not been present to hear oral argument in connection with the case.

In 1957, Attorney General Thomas M. Kavanagh issued an opinion as to whether or not the newly-appointed chairman of the Michigan public service commission could participate in the decision of cases heard and submitted before his appointment and qualification as chairman. The Attorney General said, in part:

"It is not necessary to a fair trial before an administrative tribunal that the one who decides an issue must be the one who hears it.   *   *   *   And it is not necessary that all members of the board be present at the taking of testimony.

"However, those participating in the decision must consider and appraise the evidence because 'the

weight ascribed by the law to administrative findings—their conclusiveness when made within the sphere of the authority conferred on the agency—rests on the assumption that the officer or body who makes the findings has considered the evidence and upon that evidence has conscientiously reached a conclusion deemed to be justified thereby.' Cooper, Administrative Agencies and the Courts, p 216."

The Attorney General concluded that it was his opinion that the newly appointed chairman could participate in decisions on matters submitted and heard before his appointment to the commission. 1 OAG, 1957, No 3076, p 348 (July 16, 1957).

In *Vogeley* v. *Detroit Lumber Co.* (1917), 196 Mich 516, a rehearing was petitioned for on the ground that the personnel of the industrial accident board had changed as to one member, after the case was presented and before it was decided. The motion for rehearing was denied, and the Supreme Court commented thereon:

"We see no abuse of discretion in its denial, since a quorum of the commission who heard the case were members when it was decided." *Vogeley* v. *Detroit Lumber Co., supra,* p 520.

Although the workmen's compensation appeal board, like the Michigan public service commission, is expressly exempt from the provisions of the administrative procedure act, it is significant that for administrative tribunals who are subject to the act, due process of law in connection with oral argument is satisfied provided parties are given an opportunity to "present argument to a majority of the officials who are to render the decision." CLS 1961, § 24.106 (Stat Ann 1961 Rev § 3.560[21.6]).

If a member of the workmen's compensation appeal board, who did not hear the oral argument in

the case, participates in the decision, it is evident that he is sitting in appellate capacity for the purpose of reviewing the record made before the hearing referee, as did all other board members, and it follows that he had the record available for his consideration.

Both parties were given the opportunity to, and did, in fact, present oral argument to a majority of the appeal board.   They were accorded due process of law.

Plaintiff-appellant also contends the determination of the workmen's compensation appeal board that notice of claim was not made within 120 days after the disablement, in accordance with statutory requirements, is not supported by the evidence.[1] Factually, we are faced with the recorded evidence that plaintiff was 73 years old at the time of the hearing, had been married since 1936; in 1958 he was supporting 4 dependent minors and had worked at Revere Copper and Brass, defendant, continuously from 1925 to January 30, 1958; on April 1, 1958, plaintiff, then aged 65 years, retired under the terms of the defendant's pension plan.   Plaintiff filed an application with the Michigan workmen's compensation department on December 4, 1963, alleging an occupational disablement as of April, 1957, due to pulmonary emphysema.   The application was subsequently amended to include an inguinal hernia.   Defendant denied liability in connection with both claims.

---

[1] Workmen's Compensation Act, Part VII, Section 10 (CL 1948, § 417.10 [Stat Ann 1968 Rev § 17.229]): "The requirements as to notice as to occupational disease and death resulting therefrom and the requirements as to the bringing of proceedings for compensation for disability or death resulting from such occupational disease shall be the same as required in section 15 of part 2 of this act, except that the notice shall be given to the employer within 120 days after the disablement."

During the years of his employment with this company, plaintiff did heavy work in an atmosphere of dust, smoke and fumes. The first aid records of the company show that the plaintiff was treated through the years for many accidental injuries, including one which caused the amputation of a finger. Plaintiff is presently afflicted with pulmonary emphysema. He testified he first noticed effects from the fumes and dust "around 1950–1956"—"It was fumes, you could smell copper", with choking, difficulty in breathing, and a cough, which began in 1951. Though he did not know the cause, he talked with his foreman, telling the foreman that he would get choked up and start coughing, and that he couldn't keep up with the heavy work.

"*Q.* I see. What did you tell Johnny Meyer? [the foreman]

"*A.* Well, I told him you know a lot of times he put me on the heavy jobs. I told him I couldn't do it on account of this you know, I thought I had asthma, I didn't know what it was, but I would get choked up, you know, when I get working fast trying to keep up I found out I couldn't keep up on account of, you know, I would get too warm or something. I got hot and I started coughing and so it began to, you know, I began to slow down and the fellows didn't, you know, have no sympathy with me because I was, you know—

"*Q.* What was the discussion with Johnny Meyer, what did you tell him, though, about this?

"*A.* Well, Johnny Meyer would tell me, he say, 'White, I don't have nothing for you to do, he said, you ought to retire.' * * *

"*Q.* Did you tell him what your problem was?

"*A.* I told him I have a heaviness in my chest and I just—I wasn't able to do it and my side, lots of times my side would hurt me so that I, you know, I couldn't hardly get my wind, so I just, I tell him

that I didn't want to do it, but not because I didn't want to do it, but because I wasn't able.   *   *   *

"*A.* Because I told him that I didn't—I wasn't able to do this heavy work and he say, 'White, I don't have nothing else for you to do' so he just sent me home.   Me and him had a few words, you know, arguments and he was very nice about it, but sometimes it would make him mad because I tell him I couldn't do it, he get kind of sore.   *   *   *

"*Q.* What conditions did you tell him about?

"*A.* I told him about my side, was the main thing about the handling the heavy work, and when I, you know, grab hold of a heavy bar or something, a big bunch of scrap, why, when I throw it down, you know, I am just about out of wind, that's all, just out of wind.   *   *   *

"*Q.* (*by Mr. O'Connell*): What did you tell him about the fumes and acid insofar as you were concerned?

"*A.* I told him I wasn't able to do it because I would choke up when I get in those places.

"*Q.* And what did he say?

"*A.* Well, sometimes—sometimes he try to find me something else and sometimes he wouldn't, he just said, well, you go home."

His foreman made no report to the company of this alleged condition, but suggested the plaintiff retire.   At plaintiff's hearing, the foreman testified:

"*A.* Well, like I said, he would either say he didn't have his [hernia] belt on and he didn't think he could do it or he thinks he shouldn't do that job.

"*Q.* Did you ever ask him why he should think he couldn't do the job?

"*A.* Well, yes, like I say, the belt was one of them, and that's about the only thing that I can remember.

"*Q.* In other words, did he complain of having a hernia?

"*A.* Yes."

Dr. Henry A. Chapnick, a specialist in internal medicine, testified concerning the plaintiff:

"The chest was emphysematous, the expansion of the chest was limited, * * *
* * * is disabling * * *"
"* * * is a permanent condition."

The employer's first aid records concerning the plaintiff show no specific complaint of breathing difficulties.

In 1946, the plaintiff began to have trouble with his side; his doctor found he was suffering from a hernia and the company had him fitted for a truss, which he used until the company doctor, Dr. Hall, decided to operate to repair a right inguinal hernia, in 1957. Compensation benefits were paid to him during his recovery. When plaintiff reported back to work with a release from Dr. Hall for light work only, he was informed that there was no light work available for him and was, in effect, put on layoff, being sent by the company to collect his unemployment insurance for 13 weeks. After that time had elapsed, the company put him on involuntary retirement. At this time, plaintiff was 65 years old, was supporting his wife and 4 dependent minors. Plaintiff has continued to experience pain in both sides of the groin area. After plaintiff filed his claim in this case and the company sent him for examination to the Detroit Industrial Clinic, it was discovered he was also suffering from a left inguinal hernia. The defendant company claims the left hernia developed after his employment with defendant ended.

The evidence was heard by the referee who rendered his decision on October 14, 1964. He found that the plaintiff had no continued disability from the repaired right hernia and the left hernia was

not compensable, but also found that the plaintiff had received a personal injury on January 30, 1958, in the nature of pulmonary disease, and ordered payment of compensation not to exceed $10,500.

Defendant filed a timely application for review of the referee's decision to the workmen's compensation appeal board on the ground that: (1) there was no related disability from pulmonary emphysema, and (2) plaintiff failed to comply with the statutory requirements relative to notice and claim. Plaintiff sought, by cross-appeal, to review the referee's finding of no compensation in connection with the alleged hernia. The facts governing this case upon review by this Court are those found by the workmen's compensation appeal board, in its opinion on review.

On October 7, 1966, the appeal board rendered its decision, the majority of four members holding that the referee would be sustained in his decision on the hernia claims, but reversed in his decision on the chest disease claim. They found that benefits should be denied because of lack of proper notice and claim. The date of plaintiff's disablement was found by the appeal board to be January, 1958. Plaintiff did not file his claim or give notice of claim for compensation benefits until December 4, 1963.

In reaching its determination on the factual issue of notice, the appeal board was required to make an analysis of the testimony of the plaintiff and his foreman. A majority of the members of the appeal board, in reviewing such testimony, including logical inferences to be drawn therefrom, concluded that timely notice of disablement had not been given, and that, therefore, plaintiff could not recover compensation benefits.

The appeal board determined that a critical issue in the case was whether or not plaintiff had given proper notice to defendant of occupational disablement, as required by § 10 of Part VII of the workmen's compensation act. The appeal board's findings on this issue are as follows:

"In this case the plaintiff claims to have been disabled from a breathing problem caused by his employment ever since he ceased working. He does not claim, as we read in some cases, lack of knowledge or being without reason to believe that his disability was work related until he was examined by Dr. Chapnick in June, 1964. From this record we find that the first notice the plaintiff gave to defendant of a claimed employment related pulmonary disablement was when he filed his application on December 4, 1963, some five plus years after disablement. The plaintiff having failed to give notice to his employer of occupational disablement within 120 days after occurrence of same and his having reason to believe that the same was due to his employment, as required by § 10 of Part VII of the statute (Stat Ann § 17.229) and Supreme Court interpretations thereof, we must deny this claim." (Appeal Board Opinion, page 3.)

The order and opinion of the appeal board, mailed October 7, 1966, was concurred in by 4 members of the 7-member appeal board, a majority, as required by CL 1948, § 408.11 (Stat Ann 1968 Rev § 17.6[17]), as added by PA 1965, No 139. Three members of the appeal board dissented.

The decision of the workmen's compensation appeal board that the plaintiff did not give timely notice of his alleged occupational disablement within 120 days after its occurrence, as required by statute, is supported by evidence in the record and, as such, is conclusive and not subject to reversal by this Court.

The workmen's compensation appeal board is the trier of the facts in compensation cases and makes its own determination as to the credibility of witnesses and the weight to be given their testimony. *Spada* v. *Ford Motor Co.* (1934), 269 Mich 354; *Gotich* v. *Kalamazoo Stove Company* (1958), 352 Mich 88. The Michigan Constitution and the workmen's compensation act clearly limit the scope of appellate review of a final decision or determination of the workmen's compensation appeal board.

"Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28.

The giving of timely and sufficient notice is a question of fact and not a question of law. *West* v. *Northern Tree Company* (1961), 365 Mich 402, 406; *Denton* v. *Angell Construction Company* (1965), 1 Mich App 669, 672. Absent fraud, and plaintiff does not claim fraud in this proceeding, the finding of fact by the appeal board that plaintiff did not give timely notice is conclusive upon this court, if it is supported by any evidence. *Thornton* v. *Luria-Dumes Co-Venture* (1956), 347 Mich 160, 162.

This Court will not weigh the evidence or the respective arguments by the parties in support of the contentions presented before the referee and the appeal board. This Court need only find, and this we do, that there is "some evidence" which supports appeal board findings of plaintiff's failure to give the statutorily required timely notice. Nothing in the record would support a finding that the left inguinal hernia was "recent in origin," "arising out of and in the course of" plaintiff's employment, or was "promptly reported" to the defendant.[2] There

---

[2] CL 1948, § 417.1 (Stat Ann 1968 Rev § 17.220).

is no basis for any finding of compensation bene-
fits. *Johnson* v. *Vibradamp Corporation* (1967),
6 Mich App 713; *Ash* v. *Great Lakes Greyhound
Lines* (1953), 337 Mich 362.

The workmen's compensation appeal board re-
versed the hearing referee, granting compensation
on the premise of a pulmonary disability, but did
not reverse the referee's denial of benefits for a
hernia. The evidence supports the appeal board
finding.

Affirmed. No costs.

Lesinski, C. J., concurred with McGregor, J.

Levin, J., (*dissenting*). The workmen's compen-
sation appeal board's finding that in January, 1958,
the defendant was disabled by emphysema is not
supported by any evidence whatever. While the
evidence might support a finding that in January,
1958, the defendant was disabled from working in
a plant atmosphere permeated with dust, smoke
and gaseous fumes, such as was alleged to be the
condition of the atmosphere in the defendant's plant
in and prior to January, 1958, there is no evidence
that the defendant had emphysema in January,
1958, or that he could not then have worked in an
unpolluted atmosphere.

Conceding that the plaintiff has the burden of
proving that he gave timely notice to his employer,
that the question of timeliness and sufficiency of,
notice is a question of fact and fact findings of the
workmen's compensation appeal board must be ac-
cepted by us if supported by any evidence whatever
(*Thornton* v. *Luria-Dumes Co-Venture* [1956], 347
Mich 160, 162), it is, nevertheless, our duty to de-
termine what the appeal board decided and whether

there is any evidence in the record to support its decision.

The appeal board did not expressly find that the plaintiff knew or had reason to believe[1] in January, 1958, that he had emphysema.[2] Any implied finding to that effect is unsupported by the record.

Plaintiff's doctor testified that upon examining the plaintiff in 1964 he discovered that the defendant's chest was emphysematous. The *defendant's* medical expert witness testified that when he examined the plaintiff in 1964 he did not find symptoms of emphysema. There is no basis for a finding that the plaintiff, a common laborer without a medical education, had reason to believe that he had emphysema in 1958.

The disability of being unable to work in a plant with a dusty, smoke, fume-ridden atmosphere and the disability caused by the disease of emphysema, which disease can disable one from working in the

---

[1] See *Gotich* v. *Kalamazoo Stove Company* (1958), 352 Mich 88, 93; *Finch* v. *Ford Motor Company* (1948), 321 Mich 469, 476.

[2] The appeal board found:

"That the emphysema diagnosed by Dr. Chapnick in 1964 was precipitated by the employment hazard and had disabled the plaintiff since January 1958, is the referee's finding. The supporting evidence is not overwhelming but possibly sufficient to negate our taking a contrary view."

Parenthetically, the referee did not find that the plaintiff was disabled by emphysema in January, 1958. The referee found that the plaintiff had suffered a personal injury on January 30, 1958, arising out of his employment. There is a difference between the date of injury and the date of disablement. The date of injury in respect to an occupational disease is determined arbitrarily under the statute. It is the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death. CL 1948, § 412.1 (Stat Ann 1968 Rev § 17.151); CL 1948, § 417.2 (Stat Ann 1968 Rev § 17.221). See, also, *Joslin* v. *Campbell, Wyant & Cannon Foundry Co.* (1960), 359 Mich 420, 428.

On January 30, 1958, the plaintiff temporarily left the defendant's employ to undergo a hernia operation. Upon returning from his convalescence in March, 1958, he did not reenter the defendant's employ and retired. Thus, January 30, 1958 was the statutory date of injury for any disablement occurring after that date arising out of the alleged conditions of employment at the defendant's plant.

healthiest atmosphere, are two separate disabilities. There are countless persons who, although unable to work in a dusty, smoke, fume-ridden atmosphere, are entirely capable of working in an atmosphere free of such conditions. And for all that appears on this record, in January, 1958, the plaintiff was only disabled from working in a dirty atmosphere and had not suffered the kind of disability which results from contracting the disease of emphysema.

The *injury* done the plaintiff when his overexposure to a polluted atmosphere brought about his disablement from further employment in such an unclean atmosphere is separate and distinct from the *disease* of emphysema even though the subsequently contracted disease could possibly be viewed as an extension or aggravation of the earlier injury.

Since the injury which disables one from working in a dirty atmosphere and the disease which disables one from working in a clean atmosphere are separate and distinct, causing two separate and distinct disabilities, the 120 day statute of limitations begins to run as to each separately when, and not before, the employee knows or has reason to know of the injury, disease or disability for which compensation is sought.[3]

There is nothing in the record which would support a finding that the plaintiff knew or had reason to believe he had emphysema in 1958. The appeal board's finding that he was disabled in 1958 and

[3] Compare *Tomasini* v. *Youngstown Mines Corporation* (1962), 366 Mich 503, where the court held that an employer's knowledge of non-disabling injury, as distinguished from knowledge of disability due to injury, does not toll the limitational period provided in the workmen's compensation act. Similarly, an employee's knowledge of one disability, *i. e.,* disability to work in a dirty atmosphere, does not mean that he also knows he is suffering from the disease of emphysema or that he is disabled from working at other locations where the atmosphere is not so polluted.

that he failed to give notice to his employer within 120 days of the 1958 disablement does not preclude an award of compensation provided the plaintiff gave notice within 120 days of knowing or having reason to believe that he had became disabled by reason of the separate disease of emphysema.

I would reverse and remand to the workmen's compensation appeal board for a new hearing.