## THORNTON *v.* LURIA-DUMES CO-VENTURE.

1. Workmen's Compensation—Appeal Board—Credibility of Witnesses—Inferences—Supreme Court.

   The workmen's compensation appeal board passes on the credibility of the witnesses and draws its inferences from the circumstances and facts which it finds established and the Supreme Court may reverse awards for a failure of evidence to support them but is not the trier of the facts.

2. Same—Certiorari—Questions Reviewable by the Supreme Court.

   The writ of certiorari to review proceedings to recover workmen's compensation brings to the Supreme Court questions of law only and does not permit the weighing of evidence to determine whether administrative findings of fact offend rules governing clear weight and preponderance of evidence as on appeals from circuit court, the Court being obligated to accept an administrative finding of fact that is supported by any evidence whatever to sustain it.

3. Evidence—Inferences.

   Evidence is the means by which inferences may logically be drawn as to the existence of facts.

4. Workmen's Compensation—Finding of Appeal Board—Death of Supervisory Employee on Highway En Route with Injured Employee.

   Finding of workmen's compensation appeal board that plaintiff's decedent was a supervisory employee of a joint enterprise that had been undertaken by 2 foreign corporations for reclaiming metal from a foundry dump in this State and that he had been given authority to take an injured employee to Chicago, Illinois, for treatment and was killed in a collision in Indiana while en route *held*, supported by evidence, hence, the joint enterprise

References for Points in Headnotes
[1, 2] 58 Am Jur, Workmen's Compensation § 522 *et seq.*
[5] 58 Am Jur, Workmen's Compensation § 543.

employer and its workmen's compensation insurer were properly held liable for workmen's compensation rather than constituent corporation and its insurer.

5. SAME—COSTS.

Costs are awarded to plaintiff dependents in their proceeding to recover workmen's compensation against employer defendant and its insurer but are awarded against plaintiff in favor of corporation and its insurer which with another corporation had formed the joint-enterprise employer, where the joint-adventure constituent corporation was not held liable.

Appeal from Workmen's Compensation Appeal Board. Submitted October 3, 1956. (Docket No. 32, Calendar No. 46,699.) Decided December 6, 1956. Rehearing denied May 17, 1957.

Elizabeth L. Thornton, widow of Earl Thornton and guardian of his children, presented claim for compensation against Luria-Dumes Co-Venture, Luria Steel & Trading Corporation, a foreign corporation, Dumes, Inc., a foreign corporation, Highway Casualty Company, insurer of Co-Venture and of Dumes, and United States Fidelity & Casualty Company, insurer of Luria, arising from death of Thornton while transporting another injured employee. Award to plaintiff against Co-Venture and its insurer, who appeal. Plaintiff cross-appeals. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan (Benjamin Marcus,* of counsel), for plaintiff.

*Markle, Markle & Eubank (Fergus Markle,* of counsel), for defendants Luria-Dumes Co-Venture and Highway Casualty Company.

*Walter A. Mansfield (Herbert H. Sulzbach,* of counsel), for defendants Luria Steel & Trading Corporation and United States Fidelity & Guaranty Company.

Black, J. Thirty-nine years ago, on approach to consideration of another award of compensation for death of an employee, this Court had occasion to characterize its appellate function with definitive vigor (*Meyers v. Michigan Central R. Co.*, 199 Mich 134). The record before us, brought here on certiorari to review compensation awarded the dependents of employee Earl Thornton, suggests that we should now repeat the same proem. I quote (pp 137, 138 of report):

"It may not be necessary to repeat what we have so frequently said that this Court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award. The evidence may not be direct; it may be circumstantial. The board not only passes on the credibility of witnesses, but draws its inferences from the circumstances and the facts which it finds established. We may reverse awards for a failure of evidence to support them, but we are not the triers of the facts. With this view in mind, we approach the consideration of this case."

Our jurisdiction, invoked upon issuance and return of certiorari to the workmen's compensation department, is markedly limited. The writ brings us questions of law only. It does not permit scale-weight of evidence and inference here, as on appeals from circuit court judgments, to determine whether administrative findings of fact offend rules governing clear weight and preponderance. Our obligation is to accept, without question, findings that are certified here if there be any evidence whatever to sustain those findings, regardless of thought or suggestion addressed to improbability thereof. Furthermore, and when we employ as above the word "evidence," synonymity with the word "facts" is not intended. "Evidence" is really the means by which inferences

may logically be drawn as to the existence of facts (*Tjernstrom* v. *Ford Motor Co.*, 285 Mich 450, 456).

The undisputed fact-background of this case may fairly be outlined as follows:    October 27, 1951, Luria Steel & Trading Corporation entered into a contract at Chicago with Dumes, Inc., by the terms of which the 2 corporations joined in forming what is known in the record as Luria-Dumes Co-Venture. The contracted purpose of the Co-Venture was that of reclaiming metal from a foundry dump at Muskegon.  Employees of the defendant Co-Venture—likewise those of defendant Dumes, Inc.,—were protected under the workmen's compensation law by defendant Highway Casualty Company as insurer, whereas employees of defendant Luria were correspondingly protected by defendant United States Fidelity & Guaranty Company.  The nub-controversy in this case thus becomes visible, and it is made apparent in respective briefs of the 2 insurers, each of which inferentially nominates the other for the honor of paying compensation in this case of Thornton, if payment is to be made.

We turn now to proof-supported findings of the appeal board: Mr. Thornton was duly placed in charge of operations of the Co-Venture at Muskegon. He remained on the payroll of the Co-Venture until after his death.   April 20, 1953, a temporary employee of the Co-Venture, John Tessolin, hurt his back while engaged in loading, on a flatcar, a heavy crane previously furnished by Luria to the Co-Venture.   Prior to his having been sent from Chicago to Muskegon, Tessolin was a regular employee of the Anthony Contracting Company of Chicago.   By agreement reached with Anthony, Tessolin was assigned to work for the Co-Venture on the Muskegon job.

About 6 in the evening of the day his injury was sustained, Tessolin telephoned Walter Roth at Chi-

cago with respect to the injury and its treatment. Roth was an executive officer of Luria. With a Mr. Erman, Roth was in charge of the operations of the Co-Venture. He advised Tessolin to obtain such medical attention as was necessary and that he should go to a hotel at Muskegon for that purpose. An hour or so later Tessolin called Roth again. This time Tessolin and Thornton talked with Roth together. Tessolin asked permission to return to Chicago for treatment, and Thornton advised Roth that he would drive Tessolin to Chicago, starting at once, using Thornton's car. Roth testified, with respect to this second telephone call:

"Tessolin asked at that time if he could return. I suggested that, I thought the best thing was for him to stay over until tomorrow and find out how he felt. I might preface that by saying that Tessolin told me that Thornton had taken him to the hospital here in Muskegon where he had been examined and given some sedative for the pain. Tessolin said that he had talked with Thornton and asked him if he would bring him back, Tessolin feeling that he would get better attention if he came back to Chicago rather than stay at Muskegon.

"Q. Well, did you authorize the return of both of these men?

"A. Specifically, I did not instruct them to return. I told Tessolin that if Thornton was agreeable, and he felt that he must return, it was all right with me. If they wanted to change their mind, they could do that also."

Thornton and Tessolin, accompanied by a third employee, one Albino, started promptly for Chicago, in Thornton's car, following the second call to Roth. Shortly before midnight of the same day, and near Michigan City, Indiana, Thornton's car came into violent collision with a motor truck. Thornton was killed. So were Tessolin and Albino.

Roth's authority to direct and control Thornton's work is prima facie established by his own testimony, as follows:

"Q. Were you the co-manager in this venture?

"A. I would say that that responsibilty was split up between Mr. Erman and myself. In other words, he was the last authority. If he wasn't around, I made some of the decisions. At times I made the decisions whether or not he was around."

It is unnecessary, considering our stated and circumscribed appellate function, to detail at further length the testimony and exhibits on which questions brought here have been argued. Whether Thornton and Tessolin, either or both, were at the time employees of the Co-Venture distinguished from Luria; whether their fatally-ending trip toward Chicago was one undertaken in furtherance of Thornton's employment by the Co-Venture as claimed by plaintiff; whether the trip was previously planned by Thornton and taken for his own purposes as claimed by the Co-Venture, and whether, as claimed by plaintiff, Roth was authorized to approve the trip in behalf of the Co-Venture, were questions of fact for the department below and they have not become questions of law for us.

The appeal board of the department found, with full support of evidence and legitimate inference:

"It is the finding of the workmen's compensation appeal board that deceased was proceeding to Chicago on the night of April 20, 1953, acting in his capacity as a supervisor of the Co-Venture and after being given authority to make the decision to take an injured worker to Chicago for treatment, we further find that while engaged in this mission he received an injury which arose out of and in the course of his employment as an employee of the defendant, Luria-Dumes Co-Venture which resulted in his immediate death. Plaintiff and deceased's children, Sharon

and Brian, are entitled to receive compensation as provided in the award entered by the hearing referee against defendants Luria-Dumes Co-Venture and their insurer, Highway Casualty Company."

Affirmed. Costs to plaintiff against defendants Luria-Dumes Co-Venture and Highway Casualty Company. Costs to defendants Luria Steel & Trading Corporation and United States Fidelity and Guaranty Company against plaintiff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, and KELLY, JJ., concurred with BLACK, J.

CARR, J., concurred in affirmance.

BOYLES, J., did not sit.