LOCKWOOD
*v.*
CONTINENTAL MOTORS CORPORATION AND
SECOND INJURY FUND

1. WORKMEN'S COMPENSATION — LEGS — INDUSTRIAL USE — NON-LEG INJURY.

Workmen's compensation for permanent and total disability is payable where a non-leg malady resulting from an occupational disability is triggered by the use of the legs and the malady prevents the further use of the legs in industry (MCLA § 412.10).

2. WORKMEN'S COMPENSATION—LEGS—INDUSTRIAL USE—VERTIGO.

A workmen's compensation claimant was entitled to benefits for permanent and total disability because of the loss of the industrial use of both legs where, as a result of his occupation, he suffered from vertigo caused by using his legs and the vertigo prevented further use of the legs (MCLA § 412.10).

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur, Workmen's Compensation §§ 288, 289, 296, 444.
[5] 58 Am Jur, Workmen's Compensation § 530.

3. WORKMEN'S COMPENSATION—LEGS—INDUSTRIAL USE—VERTIGO—
OTHER CAUSES.

A workmen's compensation claimant was entitled to benefits for
the loss of the industrial use of both legs where, as a result
of his occupation, he suffered from vertigo when he used his
legs and the vertigo prevented the further use of the legs
even though the vertigo also occurred when the claimant moved
his arms or body extensively or when he was exposed to noise
where the industrial disability was primarily leg-related, as
shown by the fact that the claimant was capable of sedentary
work (MCLA § 412.10).

4. WORKMEN'S COMPENSATION—LEGS—INDUSTRIAL USE—LEG-RELAT-
ED INJURY.

Industrial loss of the use of the legs is not established merely
by any infirmity which causes total disability; however, where,
at the least, the infirmity is triggered by the use of the legs
and the infirmity prevents further industrial use of the legs
the worker is entitled to benefits for total and permanent
disability even though the infirmity is also triggered by other
causes (MCLA § 412.10).

5. WORKMEN'S COMPENSATION—ADMINISTRATIVE LAW—APPEAL AND
ERROR—FINDINGS OF FACT.

Findings of fact of the workmen's compensation appeal board
will not be disturbed if there is any evidence whatever to
support the finding.

Appeal from Workmen's Compensation Appeal
Board. Submitted Division 3 January 8, 1969 at
Grand Rapids. (Docket No. 4,989.) Decided Octo-
ber 30, 1970. Leave to appeal denied April 8, 1971.
384 Mich 823.

Claim by Almond Lockwood against Continental
Motors Corporation and Second Injury Fund for
workmen's compensation benefits for the loss of the
industrial use of both legs. Claim denied by work-
men's compensation appeal board. Claimant ap-
peals by leave granted. Reversed and remanded.

*Marcus, McCroskey, Libner, Reamon, Williams &
Dilley* (*Ronald D. Glotta,* of counsel) for plaintiff.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,*
of counsel) for defendant.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *A. C. Stoddard,* Assistant Attorney General, *Glenn W. House, Jr.* and
*Daniel G. Berk,* Assistant Attorneys General, for
defendant Second Injury Fund.

Before: LEVIN, P. J., and HOLBROOK and DANHOF,
JJ.

LEVIN, P. J.  The plaintiff, Almond Lockwood, is
a disabled former employee of the defendant, Continental Motors Corporation.  He worked for several years in a division where he was exposed to the
tremendous noise generated by automobile and aircraft engines being tested.  As a result he suffered
an 82% loss of hearing in his left ear and an 89%
loss in his right ear and became virtually deaf.

A referee determined that Lockwood suffered an
occupational disability on October 18, 1955 and Continental was directed to pay workmen's compensation.  He was paid $34 a week for 500 weeks, beginning October 18, 1955.  The payments ceased on May
18, 1965.

In June, 1965 he filed a claim for additional compensation asserting that he had suffered a total and
permanent disability.  He claimed that in addition
to his loss of hearing he suffers from vertigo which
is precipitated when he uses his legs and consequently he has sustained "the permanent and total
loss of industrial use of both legs" and was entitled
to compensation for total and permanent disability
under what is now § 10(b)(7), part II.[1]

---

[1] "Sec. 10. * * * Total and permanent disability, compensation
for which is provided in section 9, means:

The workmen's compensation appeal board rejected Lockwood's total and permanent disability claim, although it found that he was in fact permanently and totally disabled because of residuals of the October 18, 1955 injury. The board observed that had Lockwood's injury occurred before a 1954 change in the law he would be entitled to further compensation.[2]

The present definition of total and permanent disability was added to the workmen's compensation act by amendments enacted in 1954, 1955, and 1956.[3] In a series of decisions the Michigan Supreme Court has held that under the language governing before the effectiveness of the 1954 amendment an injured workman was entitled to be compensated for total and permanent disability if he was in fact totally

---

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury." CL 1948, § 412.10, as amended by PA 1956, No 195 (Stat Ann 1960 Rev § 17.160).

2 A physician expressed the opinion that Lockwood was disabled from returning to work where he would be exposed to noise or to any active job which would require walking, bending, stooping, etc., and the appeal board appears to have adopted that testimony when it declared that Lockwood cannot work because of his hearing loss.

3 The text of these amendments is set forth in footnote 1 which was enacted as there quoted by PA 1954, No 175, except that the clause here pertinent, clause (7), was added by PA 1956, No 195.

PA 1955, No 250 amended § 9 to provide that the exception for the 500 week time limitation on the duration of benefits was for "permanent and total disability *as defined in section 10.*" The italicized words were added by this enactment.

The 1954 amendatory language replaced the following provision:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof, shall constitute total and permanent disability, to be compensated according to the provisions of section 9." PA 1949, No 238.

and permanently disabled even if he could not bring himself within the pre-1954 definition, which was not exclusive;[4] and that after the effectiveness of the 1954 amendment, "the issue of total and permanent disability is not one of fact but whether plaintiff's injuries come within one of the enumerated losses set forth" in § 10(b).[5]

Parenthetically, we observe that had Lockwood suffered his injury on or after September 1, 1965, the effective date of PA 1965, No 44, he would be entitled to receive compensation for the duration of his disability even if it is not within the definition of total and permanent disability.[6]  As matters now stand, workers, like Lockwood, injured between August 13, 1954, the effective date of the 1954 amendment, and September 1, 1965, the effective date of the 1965 amendment, are limited to 500 weeks compensation unless their disability meets the § 10 (b) definition of total and permanent disability.

The issue in this case is whether Lockwood suffered the "permanent and total loss of industrial use of both legs" within the meaning of clause (7) of § 10(b).

Lockwood's legs themselves were not injured or affected.  He can raise and move them through the full range of motion.  The muscle tone is good and, except for the injury to his hearing and the result-

---

[4] *Springer* v. *Reed Foundry & Machine Company* (1956), 346 Mich 11; *Edwards* v. *Michigan Light Alloys Corporation* (1956), 346 Mich 169.  See footnote 3 for the statutory language as it read before the effectiveness of the 1954 amendment.

[5] *Hier* v. *Boichot Concrete Products Corporation* (1967), 379 Mich 605, 612; *Verberg* v. *Simplicity Pattern Company* (1959), 357 Mich 636; *Liesinger* v. *Owen-Ames-Kimball Company* (1966), 377 Mich 158, 164, n 5.

[6] Section 9(a) was amended by the 1965 act to eliminate the 500 week limitation and to provide that "compensation shall be paid for the duration of the disability."  MCLA § 412.9 (Stat Ann 1968 Rev § 17.159).  However, § 3 of the 1965 act provides that its provisions "apply only to personal injuries the date of injury of which occurs on or after the effective date" of the act.

ing repercussions, he is, for a man of his age, in fairly good physical condition.

The appeal board found that Lockwood's dizzy spells, which began in 1959, were "precipitated because of bodily movement and noise instead of the actual use of the limbs *per se*" and concluded that he had not lost the industrial use of his legs. We reverse.

Clause (7) was considered by the Michigan Supreme Court in *Paulson* v. *Muskegon Heights Tile Company* (1963), 371 Mich 312. Paulson had suffered a punctured bladder and a fractured pelvis. This caused constant urine drainage from the bladder to surrounding sinus tracts and he experienced pain when any pressure was borne by either leg, with the result that he was inhibited in the use of his legs. The Supreme Court ruled that Paulson had suffered the permanent and total loss of industrial use of both legs even though there had been no direct injury to his legs (p 319):

"Obviously, we are not referring to amputation or paralysis, both of which are otherwise covered in section 10, as quoted. We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of legs, which is so severe as to make use of the legs in industry practically impossible."

Lockwood, like Paulson, did not suffer any direct injury to his legs. The record is clear, however, that when Lockwood uses his legs, as when he walks for an extended period of time, he becomes dizzy and has to sit down. Thus, leg movement causes dizziness and the dizziness prevents further use of his legs. That is precisely the kind of non-leg, but leg-

connected, injury for which total and permanent disability compensation would appear to be required to be paid.

But the appeal board ruled that Lockwood's case was different than Paulson's because Lockwood's "disabling symptoms are not traceable to the use of the lower limbs *per se* but are due to an impairment of the balance mechanism in his inner ear which is aggravated by any movement and/or noise".

We think that the appeal board misreads *Paulson;* a teaching of *Paulson* is that disabling symptoms are traceable to the use of the lower limbs when they are due to an impairment of another bodily mechanism which is aggravated by leg movement, that compensation for total and permanent disability is payable when a non-leg malady is triggered by the use of the legs and it is that condition which prevents use of the legs in industry.

Lockwood's inability to use his legs is indeed traceable to an impairment of the balance mechanism in his inner ear; that impairment is aggravated by movement or noise.  Paulson's inability to use his legs was likewise due to a non-leg deficiency, namely an impairment of his bladder and drainage system; that impairment was aggravated when he moved his legs.

*Lockwood* might be distinguished from *Paulson* on the ground that the pain[7] Paulson suffered which prevented him from using his legs industrially was "associated primarily with the use of the legs" while Lockwood's dizziness which prevented him from fur-

---

[7] The contention that a worker cannot be said to have lost the industrial use of his legs unless he incurs, as did Paulson, pain associated with the use of his legs which is so severe as to make use of the legs in industry practically impossible, is palpably wrong. Such a restrictive definition would preclude recovery by one whose legs have been badly mangled but not amputated or paralyzed; this sort of condition might be painless but clearly should be regarded as a loss of industrial use of the legs.

ther using his legs is caused by noise as well as movement and by movement of his arms or body as well as by movement of his legs. This possible distinction is not, however, meaningful.

The *Paulson* Court was careful to point out that the construction there placed by it upon § 10(b)(7) applied "insofar as the facts in this case are concerned." The Court wisely avoided attempting to divine a definitional statement good for all cases.

It is enough that Lockwood suffers dizziness when he uses his legs and that because of that dizziness he cannot further use his legs in industry. The fact that he experiences dizziness and resulting loss of the use of his legs when he moves his arms or body extensively or is exposed to noise does not gainsay the fact that he experiences this leg-disabling phenomenon when he uses his legs. That he, perhaps less fortunately than Paulson, is subjected to the disabling phenomenon by causes other than the use of his legs is hardly a good reason for depriving him of compensation which clearly would be payable if the disabling phenomenon manifested itself only when he used his legs.

It is irrefragable that even if Lockwood did not experience vertigo when he is exposed to noise or, as sometimes occurs, because of other body movement,[8] he could not use his legs in industry because of his leg-triggered vertigo. The defendants are not insulated from payment of compensation for total and permanent disability in consequence of Lockwood's leg-caused vertigo because his vertigo is caused as well by other stimuli. That Lockwood's *industrial* disability is primarily leg-related is shown by the doctor's testimony that, while Lock-

---

[8] As to other body movement, it is clear on this record that, while Lockwood experiences dizziness when seated, the principle causes are the use of his legs or exposure to noise.

wood cannot engage in active work requiring the use of his legs, walking, stooping, bending, he can engage in sedentary work.[9]

The appeal board asserts, and we agree, that *Paulson* cannot properly be read as "having held that any infirmity which causes total disability does establish the industrial loss of use of the limbs." The board declared:

"Perhaps it can be said as a general rule, when competent evidence shows that disabling pain and/or limitation is encountered by virtue of the fact that the limb under consideration is put to use, then it is reasonable to conclude that the industrial loss of use has occurred. However, as a general rule, when the limb cannot be used industrially simply because of other disabling infirmities, then it would appear to do violence to the statutory intent to hold that the industrial loss of use of such limb had occurred."

While we need not decide whether the appeal board's generalization correctly marks the boundaries of the statutory language,[10] we think the first

---

[9] Lockwood's ability to work while seated would not, of course, disqualify him for benefits attributable to the loss of the industrial use of his legs. See *Liesinger v. Owen-Ames-Kimball Company, supra,* fn 5.

[10] The act speaks simply of the "permanent and total loss of industrial use of both legs." Why then should not Lockwood recover since indisputably his legs are no longer industrially useful? The answer of the appeal board appears to be that unless the statutory language is administratively or judicially limited a worker who had suffered merely "a common cold, a broken arm, or any other infirmity which would disable him from working" could claim total and permanent disability because while suffering from such infirmity he could not industrially use his legs.

But a "common cold, broken arm, or other infirmity" are not likely to be of such long duration or of such serious consequence that the worker will have need to claim compensation for more than 500 weeks as a totally and permanently disabled person. We also note that a worker could lose his hearing and still have the industrial use of his arms and legs; it is, therefore, not true that "any other infirmity" would qualify for total and permanent disability.

part is a useful guide to decision in this case in the light of *Paulson*. Here there was competent evidence showing that Lockwood encountered "limitation" by virtue of the fact that the limbs under consideration are put to use. But it can no more properly be said of Lockwood than of Paulson that he was deprived of the industrial use of his limbs "simply because of other disabling infirmities." In both cases the use of the uninjured legs aggravated the "other disabling infirmity" and in consequence both Lockwood and Paulson encountered a "limitation * * * by virtue of the fact that the limb under consideration is put to use." It is, therefore, "reasonable to conclude that the industrial loss of use has occurred."

While industrial loss of use of the legs is not established by "any infirmity" which causes total disability, at least where, as here, as in *Paulson*, the

---

During argument, a similar concern was expressed: unless we limit the statutory language, workers who suffer from heart disease or emphysema which prevents them from using their legs industrially may claim total and permanent disability. However, before a worker can recover total and permanent disability compensation he must show a work-caused injury or disease. Furthermore, it may well be that where compensation is claimed for heart or lung disease that some limitation may be appropriate in the light of the special history of the compensation of incapacity traceable to such diseases. That is not, however, a good reason for imposing a limitation in a case such as this where the worker's inability to use his limbs is not attributable to a general reduction of bodily function, but rather to an injury which even if it had been suffered by a young person otherwise sound and healthy would make impossible movement of his limbs in gainful employment.

We know from *Paulson* that just because Lockwood's legs are in good condition and his leg function itself is unaffected, that his inability to use his legs is attributable to another disability, does not necessarily mean that his injury is not leg-related.

When Paulson used his legs it aggravated another condition and made it painful for him to continue to use his legs. When Lockwood used his legs it aggravated another condition, making it necessary for him to sit down and preventing him from using his legs. In both cases the other condition is leg-related.

The *Paulson* and *Lockwood* cases are different from the case of the heart disease patient where the disease affects all functions and activities more or less in the same way and where there has been a general decline in bodily function.

infirmity is triggered by the use of the legs preventing their further use industrially, the worker has established the right to recover for total and permanent disability even though the infirmity is also triggered by other causes, *e.g.,* noise and other body movement.

In *Hutsko* v. *Chrysler Corporation* (1968), 381 Mich 99, the Michigan Supreme Court affirmed a decision of our Court reversing the workmen's compensation appeal board in a case where the question was whether the worker had lost the industrial use of his hand. The question did not arise under §10(b), but under § 10(a) which provides specific or schedule loss payments for particular injuries. Section 10(a) had been judicially interpreted to require payment where there has been a total incapacitating loss of use which renders the member industrially useless even though there has not been actual physical loss of the anatomical member as by amputation. In *Hutsko* the Court held that it was not enough that the worker had lost the industrial use of his hand in his skill if he could use it in unskilled labor and declared (p 104):

"In simple substance then we construe a specific schedule loss to be that loss of industrial use or function equal to actual physical loss as by destruction or amputation."

Measured by the *Hutsko* standard, Lockwood is entitled to recover. He cannot use his legs in skilled or unskilled work. The fact that he can use them for walking or driving a car is of no importance—his loss of "industrial use or function [is] equal to actual physical loss as by destruction or amputation".

We appreciate that our inquiry concerning factual determinations of the appeal board is limited

and that its fact findings may not be disturbed if there is "any evidence whatever"[11] to support them. But, as previously pointed out, we think the appeal board misread *Paulson* and that its conclusion, therefore, was made on the basis of erroneous assumptions regarding the law. We are satisfied that here, as in *Hutsko,* the appeal board was mistaken as to what constitutes loss of industrial use.

The defendant Second Injury Fund has acknowledged, in light of *Rasar* v. *Chrysler Corporation* (1969), 382 Mich 169, that if Lockwood, who was injured on October 18, 1955, is found to be totally and permanently disabled under § 10(b)(7) the burden of paying compensation rests on the Second Injury Fund.

Reversed and remanded to the workmen's compensation appeal board for the entry of an order consistent with this opinion.

All concurred.

---

[11] *Thornton* v. *Luria-Dumes Co-Venture* (1956), 347 Mich 160, 162; *Coates* v. *Continental Motors Corporation* (1964), 373 Mich 461, 466; MCLA § 413.12 (Stat Ann 1968 Rev § 17.186); Const 1963, art 6, § 28.