DRAKE v NORGE DIVISION, BORG-WARNER CORPORATION

Opinion of the Court

1. Workmen's Compensation—Total and Permanent Disability—
   Loss of Industrial Use—Statutes.

   There was sufficient evidence in the record to support the Work-
   men's Compensation Appeal Board's finding that plaintiff had
   lost the industrial use of his legs as a consequence of a work-
   related heart attack and was therefore entitled to benefits for
   total and permanent disability where the evidence showed that
   use of the legs caused fast heartbeats with resulting shortness
   of breath and edema; the fact that plaintiff's heart condition
   caused a general decline in bodily function did not preclude
   him from showing that he had lost the industrial use of his legs
   within the meaning of the Workmen's Compensation Act
   (MCLA 418.361[2][g]).

2. Workmen's Compensation—Notice of Injury—Subsequent De-
   velopment—Additional Compensation.

   A plaintiff who suffered a heart attack in 1953 and was then
   awarded benefits for total disability and who later applied for
   additional benefits for total and permanent disability in 1967
   for the loss of industrial use of his legs was not alleging a
   second and separate injury sustained at the time of the first
   injury but rather a subsequent development of the first injury;
   the Workmen's Compensation Act did not impose on the plain-
   tiff the duty of giving notice of such further development and
   did not require plaintiff's claim for further compensation
   thereon to be presented within a prescribed period, and the
   limitations of the act with respect to filing claims did not apply
   (MCLA 418.833).

Dissent by Danhof, J.

3. Workmen's Compensation—Total Disability—Total and Perma-
   nent Disability—Wage Loss—Schedule Benefits.

   *The distinction between compensation for loss of wage-earning*

References for Points in Headnotes
[1, 3, 4] 58 Am Jur, Workmen's Compensation § 283.
[2] 58 Am Jur, Workmen's Compensation § 375 *et seq.*

capacity awarded to a claimant with an injury defined as total disability, and schedule benefits awarded to a claimant with an injury defined as total and permanent disability, is an integral part of present Michigan compensation law and should not be blurred by a well-intentioned judicial attempt to remedy a past statutory inadequacy.

4. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY— LOSS OF INDUSTRIAL USE—STATUTES.

A plaintiff who had already received workmen's compensation benefits for total disability for a work-related heart attack was not entitled to additional benefits for total and permanent disability under the Workmen's Compensation Act for the "loss of industrial use" of his legs where the plaintiff's disability was neither primarily associated with nor triggered by the use of his legs but rather was caused by general bodily decline due to chronic heart disease, breathing problems, and overall weakness (MCLA 418.361[2][g]).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 January 10, 1973, at Lansing. (Docket No. 14064.) Decided June 27, 1973. Leave to appeal denied, 390 Mich 792.

Clayton Drake presented his claim for workmen's compensation benefits against his employer, Norge Division, Borg-Warner Corporation, and the Second Injury Fund. Benefits awarded. The Second Injury Fund appeals by leave granted. Affirmed.

*Marcus, McCroskey, Libner, Reamon & Williams, P. C.,* for plaintiff.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendant Norge Division, Borg-Warner Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lee A. Decker* and *A. C. Stoddard,* Assistants Attorney General, for defendant Second Injury Fund.

Before: BRONSON, P. J., and McGREGOR and DAN-
HOF, JJ.

BRONSON, P. J. Clayton Drake suffered a heart
attack on January 24, 1953. He was awarded 750
weeks of workmen's compensation, pursuant to a
finding of total disability, from defendant Norge
Division, Borg-Warner Corporation, through June
23, 1967. On August 27, 1967, he filed a petition
seeking differential benefits from defendant Second
Injury Fund and additional benefits from both
defendant Second Injury Fund and defendant
Norge. He alleged total and permanent disability
since 1953 due to the loss of industrial use of both
arms and legs. The hearing referee denied Drake's
claim. Drake appealed to the Workmen's Compen-
sation Appeal Board.[1] The appeal board reversed
the hearing referee and granted additional com-
pensation until the date of Drake's death to be
paid from the Second Injury Fund and death
benefits to be paid by defendant Norge. Defendant
Second Injury Fund appeals on leave granted.

The appeal board found that "decedent lost the
industrial use of his legs January 24, 1953". This
would place decedent within MCLA 418.361(2)(g);
MSA 17.237(361)(2)(g).[2] Plaintiff argues that this
was merely a factual determination. Defendant
argues that the appeal board applied an improper
legal standard in determining total and permanent
disability.

If this determination by the board were merely

---

[1] Drake died during the pendency of this appeal, and his widow was
substituted as plaintiff.

[2] Formerly MCLA 412.10(b)(7); MSA 17.160(b)(7):

"(7) Permanent and total loss of industrial use of both legs or both
hands or both arms or 1 leg and 1 arm; for the purpose of this
subsection (7) such permanency to be determined not less than 30
days before the expiration of 500 weeks from the date of injury." 1948
CL 412.10, as amended by 1956 PA 195.

a factual one, then we would not disturb it if there were "any evidence whatever" to support the determination. *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160; 79 NW2d 457 (1956). Here, however, the board has relied heavily on the legal definition of "loss of industrial use" in *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970). We find no cases which have extended *Lockwood* to cover a heart attack injury. Therefore we are compelled to interpret the statute upon which the board relied in its determination.

In *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), the Michigan Supreme Court refused to read into this section any requirement that there be a direct injury to the legs. The plaintiff there had suffered an injury which resulted in urine escaping into the sinus cavities of his legs. This in turn prevented plaintiff from walking without pain. He was entitled to receive benefits for the industrial loss of both legs. At 371 Mich 319; 123 NW2d 719, the Court said:

> "We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible."

In *Lockwood, supra,* the plaintiff had suffered a hearing loss which resulted in vertigo when he used his legs. The Court reversed the appeal board, stating:

> "It is enough that Lockwood suffers dizziness when he uses his legs and that because of that dizziness he cannot further use his legs in industry. The fact that he experiences dizziness and resulting loss of the use of his legs when he moves his arms or body extensively or is

exposed to noise does not gainsay the fact that he experiences his leg-disabling phenomenon when he uses his legs. That he, perhaps less fortunately than Paulson, is subjected to the disabling phenomenon by causes other than the use of his legs is hardly a good reason for depriving him of compensation which clearly would be payable if the disabling phenomenon manifested itself only when he used his legs." 27 Mich App at 604; 183 NW2d at 810–811.

The *Lockwood* Court further stated:

"While industrial loss of use of the legs is not established by 'any infirmity' which causes total disability, at least where, as here, as in *Paulson,* the infirmity is *triggered* by the use of the legs preventing their further use industrially, the worker has established the right to recover for total and permanent disability even though the infirmity is also triggered by other causes, *e.g.,* noise and other body movement." 27 Mich App at 606–607; 183 NW2d at 812. (Emphasis added.)

There was testimony in the case at bar that plaintiff had a similar injury.

"*A.* Heart and legs. My legs got so bad one time—I can't hardly bend them. They're cold.
"*Q.* What happens to your legs?
"*A.* The blood, there ain't no circulation.
                    *  *  *
"*Q.* How far can you walk?
"*A.* I don't walk at all only just out to look around the pump and come back and set down.
"*Q.* About how many feet is that?
"*A.* 25, 30.
"*Q.* Why do you have to sit down?
"*A.* To get my breath.
"*Q.* Did you have any trouble with walking before you had your first heart attack?
"*A.* No. I worked over here to the Norge and I didn't have no trouble there."

In a concurring opinion board member Storie states:

"The unrebutted evidence before us shows that it is the use of the limbs which causes the fast heart beats with its resulting shortness of breath and edema (swelling of the limbs)."

The problem with the board's reliance on *Lockwood* is that the opinion itself distinguishes heart attack injuries in footnote 10:

"The *Paulson* and *Lockwood* cases are different from the case of the heart disease patient where the disease affects all functions and activities more or less in the same way and where there has been a general decline in bodily function." 27 Mich App at 606; 183 NW2d at 812.

The appeal board specifically addressed this distinction:

"If they are different, they certainly are no less meritorious. Considering this case in the light of the intent of the Workmen's Compensation Act, we are unable to accept this neat distinction and compensate one worker and in turn discriminate against the other. We find plaintiff's decedent lost the industrial use of his legs January 24, 1953."

We agree with the appeal board that this is a meaningless distinction.[3] The fact that plaintiff's heart condition caused a "general decline in bodily function" certainly does not preclude him from showing that he has lost the industrial use of his

---

[3] We believe that the distinction argued by defendant is merely a second attempt to argue the question presented to the board of whether plaintiff's heart attack was a compensable injury. Once the board has so found, we see no distinction between the loss of the industrial use of an employee's legs being precipitated by the bladder-related injury as in *Paulson,* the hearing-related injury as in *Lockwood,* or the heart attack as in the present case.

legs within the meaning of MCLA 418.361(2)(g).
The injury was leg-related, as required by *Paulson,*
in that walking caused the heart to beat faster
and the resulting edema in the legs—which pre-
vented their use. Plaintiff testified that his legs
became cold and immovable. There was sufficient
evidence in the record to support the board's find-
ing of fact that plaintiff had lost the industrial use
of his legs as a consequence of the work-related
heart attack.

Defendant cites language from *Miller v Sullivan
Milk Products, Inc,* 385 Mich 659, 666; 189 NW2d
204, 207 (1971):

"A review of specific loss cases reveals that loss of
'industrial use' is a question of fact. The test of that
fact has been to equate such a loss with the physical or
anatomical loss of use of a member of the body rather
than with an economic reality test."

Plaintiff in the case at bar fits within this lan-
guage because he had lost the actual "physical"
use of his legs.

Defendant also cites the following language from
*Miller:*

"When the limb cannot be used industrially simply
because of other disabling infirmities, it would do vio-
lence to the statutory intent to hold that the industrial
loss of use of such limb has occurred." 385 Mich at 667;
189 NW2d at 308.

This language also proves nothing because in
*Miller* the plaintiff was claiming workmen's com-
pensation for the loss of two legs when in fact he
had only lost the use of a single leg. The "other
disabling infirmities" referred to in that case was
the injury to one ankle. In the case at bar it is not
disputed that plaintiff's condition was aggravated

by the use of both legs which in turn prevented the use of both legs.

The amicus curiae brief of the Michigan Self Insurers Association alleges that the award of the board violates MCLA 418.833; MSA 17.237(833), which states:

"If payment of compensation is made, other than medical expenses, and an application for further compensation is later filed with the bureau, no compensation shall be ordered for any period which is more than 1 year prior to the date of filing of such application."

*Morgan v Lloyds Builders Inc,* 344 Mich 524, 528; 73 NW2d 880, 882 (1955), answers this contention by quoting *Palchak v Murray Corp of America,* 318 Mich 482, 493–494; 28 NW2d 295, 300 (1947):

" 'The case at bar does not involve distinct injuries sustained in an accident, but rather 2 results of a single injury. The department of labor and industry acquired jurisdiction of the case by virtue of the original proceedings taken before it. Such jurisdiction continued for the purpose of further proceedings for compensation as the development of conditions, brought about by the original injury, might require. The statute in question did not impose on the plaintiff the duty of giving notice of such further development nor did it require plaintiff's claim for further compensation based thereon to be presented within a prescribed period, as contended by defendant. The requirements in said section as to notice to the employer, and the limitations with respect to filing claims, did not apply.' "

Plaintiff in the case at bar is not alleging a second and separate injury sustained at the time of the first injury. There was but a single injury in this case.

Affirmed. Costs to plaintiff.

McGREGOR, J., concurred.

DANHOF, J. *(dissenting)*. I must dissent. It is not possible, without doing violence to the legislative intent, to fit Clayton Drake's disability within the definition of total and permanent disability due to loss of industrial use of the limbs. MCLA 412.10(b)(7); MSA 17.160(b)(7).[1] This becomes evident when the instant case is contrasted with *Paulson* and *Lockwood.*

Paulson worked intermittently and was able to use his legs in industry between 1949, the year of his injury, and 1957 when granuloma developed as a result of that injury and surgery was required. The Supreme Court there found that Paulson's leg-connected pain was associated *primarily* with the use of his legs and was so severe as to make use of his legs in industry impossible.

Lockwood's non-leg malady, a defect in the balance mechanism of his inner ear, was triggered whenever he attempted to use his legs. That he was not suffering from general bodily decline is evidenced by the finding that although Lockwood could engage in sedentary work, he still could not use his legs in industry.

In the case at bar, the testimony of Clayton Drake's own treating physician indicates that Drake's disability was neither primarily associated with nor triggered by the use of his legs. He was, at the time of his application for differential and additional weekly benefits, 75 years of age and suffering from general bodily decline due to chronic heart disease, as symptomized by chest pains, breathing problems, and overall weakness. Drake, who had not worked since his heart attack, was unable to engage in any employment, even that involving merely mental strain. The following

---

[1] Currently MCLA 418.361(2)(g); MSA 17.237(361)(2)(g).

quotations from the deposition of Drake's physi-
cian, Dr. Lambert Geerlings, are illustrative:

"*Q.* Do you recall treating him for anything that was
directly related to his arms or his legs?
"*A.* No.
"*Q.* Does this man have any skeletal, muscular or
nerve defect in either his legs or his arms?
"*A.* I don't recall. I don't think he ever complained of
muscular pain.

*   *   *

"*Q.* Doctor, in the treatment of this patient, would
you treat anything but his heart, or his heart and
related circulatory problems?
"*A.* In his condition, just his heart, because he never
complains of anything else—nothing else there.

*   *   *

"*Q.* Aside from the exertion of his arms or his legs,
any type of exertion could cause him trouble; isn't that
right, Doctor? For example, he could move his head
back and forth, and if he did it long enough that would
be too much exertion for him, wouldn't it?
"*A.* Of course, I have never tested him out for that. If
he exerted his whole body and walked and exercised, he
couldn't do that.
"*Q.* Isn't it generally true with any heart patient that
they do have to be careful of overexertion in any form?
"*A.* Yes.

*   *   *

"*The Reporter [reading back]:*
"Now, Doctor, if you were called upon to state that
this man was unable to be employed in common
labor, and you had to state as succinctly as possible
what the reason was that he was unable to be em-
ployed, would you state it was an inability to use his
arms and legs or hands, or would you state that it
was because he had heart trouble?
"*A.* I would state it was because he has heart trouble.

*   *   *

"*Q.* So, even if he could sit down all the time, he

wouldn't have been able to work with his condition; is that correct?

"*A.* This is correct.

"*Q.* This would have been too much exertion?

"*A.* That would be, yes."

Implicit in the controlling opinion of the appeal board is the finding that the inability of plaintiff's decedent to walk in excess of 20 yards was as much the result of his shortness of breath as of the edema within his legs. Concerning edema, 1 Schmidt's Attorneys' Dictionary of Medicine states:

"There are many reasons for this condition. One is partial heart failure in which the blood of the capillaries is under high pressure and therefore does not take in the fluid from the tissues."

This case is not the one to extend the *Paulson-Lockwood* rule. Although I concurred in *Lockwood,* Judge LEVIN in his opinion, in footnote 10, was careful to distinguish claims of loss of industrial use grounded in disabling injuries resulting in weakness of the body as a whole:

"Furthermore, it may well be that where compensation is claimed for heart or lung disease that some limitation may be appropriate in the light of the special history of the compensation of incapacity traceable to such diseases. That is not, however, a good reason for imposing a limitation in a case such as this *where the worker's inability to use his limbs is not attributable to a general reduction of bodily function,* but rather to an injury which even if it had been suffered by a young person otherwise sound and healthy would make impossible movement of his limbs in gainful employment.

* * *

"The *Paulson* and *Lockwood* cases are different from the case of the heart disease patient where the disease

affects all functions and activities more or less in the same way and where there has been a general decline in bodily function." 27 Mich App 597, 606; 183 NW2d 807, 811–812 (1970). (Emphasis supplied.)

The Second Injury Fund, in urging the above distinction, is not attempting to reargue the issue of whether Clayton Drake's heart attack was a compensable injury.

No one contests that Clayton Drake suffered permanent and total disability *as a matter of fact* on January 24, 1953. He had been compensated accordingly for 750 weeks. What is at issue here is whether Mr. Drake's disability fits within the definition of permanent and total disability as a matter of law. Because of a tangled and complex interplay of amendments to our compensation law, if Mr. Drake's illness cannot be so defined, he was not entitled from the Second Injury Fund to differential benefits, *Verberg v Simplicity Pattern Co*, 357 Mich 636; 99 NW2d 508 (1959).

The majority opinion attempts to correct by artificial construction a statutory inadequacy already recognized and corrected by the Legislature. The seven categories listed under the total and permanent disability provisions are very specific. Obviously there are many severely injured employees who would not qualify under those provisions. By 1965 PA 44, MCLA 412.9(a); MSA 17.159(a)[2] now provides for compensation to be paid to the totally disabled claimant, as distinguished from the totally and permanently disabled claimant, for the duration of his disability even though he does not qualify under the exclusive definition of total and permanent disability.

My disagreement with the majority opinion is not with its attempt to arrive at greater equality

[2] Currently MCLA 418.351; MSA 17.237(351).

of compensation for those injured prior to September 1, 1965 (the effective date of 1965 PA 44). However, by doing violence to the statutory words "loss of industrial use", I fear that the majority opinion will result in future confusion on whether an injury is to be defined as total disability, entitling a successful claimant to compensation for loss of wage earning capacity, or total and permanent disability, entitling a successful claimant to schedule benefits *"irrespective of any wages he receives whether greater or less than those he received at the time of his injury". Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 665–666; 189 NW2d 304, 307 (1971), quoting from *Hutsko v Chrysler Corp,* 381 Mich 99, 102; 158 NW2d 874, 876 (1968). The distinction between compensation for wage loss and schedule benefits remains an integral part of present Michigan compensation law and should not be blurred by a well-intentioned judicial attempt to remedy a past statutory inadequacy.

Further the *Miller* case, the most recent pronouncement of our Supreme Court on the issue at hand, cannot be dispensed with as easily as the majority indicates. It is too facile to say that the "other disabling infirmities" of claimant Miller was an injury to his left ankle as opposed to a disabled heart. What is at stake is the language of the statute:

"When the limb cannot be used industrially simply because of other disabling infirmities, it would do violence to the statutory intent to hold that the industrial loss of use of such limb has occurred." *Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 667; 189 NW2d 304, 308 (1971).

Since, as the majority indicates, the finding of

the Workmen's Compensation Appeal Board was based primarily on a legal definition of "loss of industrial use" and was not merely a factual determination, I vote to reverse.