McKENNA v CHEVROLET-SAGINAW GREY IRON FOUNDRY
DIVISION, GENERAL MOTORS CORPORATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
   LEGS—INDUSTRIAL LOSS OF USE.

   A disabled worker may, under the current workmen's compensa-
   tion statutes, generally establish the right to recover benefits
   for total and permanent disability for the loss of industrial use
   of his legs even though there is no direct injury to either leg
   but where disabling symptoms present in another part of the
   body are triggered or aggravated by leg movement (MCLA
   418.521[1]).

2. STATUTES—CONSTRUCTION—GENERAL PROVISIONS—SPECIFIC PROVI-
   SIONS.

   A specific provision of a statute is controlling over a more general
   provision which may include matters within the specific provi-
   sion; the general provision affects only those cases within its
   general language as are not within the language of the particu-
   lar provision.

3. WORKMEN'S COMPENSATION—STATUTES—DISABILITY—SILICOSIS—
   LIMITATION OF BENEFITS—LEGS—INDUSTRIAL LOSS OF USE.

   A workmen's compensation statute which deals specifically with
   disability from silicosis or other dust diseases controls in a case
   where a worker lost the industrial use of his legs as a result of
   silico-tuberculosis, rather than a statute which provides for
   such loss of use of the legs generally; therefore, a limitation on
   the aggregate amount of payment contained in the former
   statute applies, and the worker is entitled to no further com-
   pensation after reaching the stated limit (MCLA 412.10[b],
   417.4).

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 278.
[2–4] 73 Am Jur 2d, Statutes § 257.
[3, 4] 58 Am Jur, Workmen's Compensation § 252.

4. WORKMEN'S COMPENSATION—STATUTES—DISABILITY—SILICOSIS—
LIMITATION OF BENEFITS.

    *A court cannot judicially legislate out the clear language of a statute which provides a stated maximum dollar amount of compensation to a worker disabled as a result of silicosis and states that this provision is to apply notwithstanding any other provisions of the workmen's compensation act (MCLA 417.4).*

Appeal from Workmen's Compensation Appeal Board. Submitted June 11, 1975, at Lansing. (Docket No. 21559.) Decided August 13, 1975. Leave to appeal denied, 395 Mich —.

Claim by Buster McKenna for Workmen's Compensation benefits from the Second Injury Fund for total and permanent disability. Benefits granted, and the Workmen's Compensation Appeal Board affirmed. The Second Injury Fund appeals by leave granted. Reversed and remanded.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.* (by *Bernard M. Freid* and *Douglas W. Johnson),* for plaintiff.

*Frank J. Kelley,* Attorney General; *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard,* Assistant Attorney General, for Second Injury Fund.

Before: ALLEN, P. J., and D. F. WALSH and O'HARA,* JJ.

D. F. WALSH, J. This is an appeal from the decision of the Workmen's Compensation Appeal Board upholding a referee's finding that the plain-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tiff has suffered "permanent and total loss of industrial use of both legs" as a result of his disabling silico-tuberculosis. The plaintiff was therefore found to be totally and permanently disabled within the meaning of MCLA 412.10(b)(7); MSA 17.160(b)(7),[1] and therefore entitled to benefits beyond those previously received under MCLA 412.9; MSA 17.159.[2] The Second Injury Fund appeals, by leave granted, urging that MCLA 417.4; MSA 17.223,[3] which places a ceiling on the amount of compensation to be awarded in the event of permanent total disability due to silicosis, precludes any further recovery by the plaintiff. Our decision necessitates a reconciliation between seemingly contradictory sections of the Workmen's Compensation Act.

Plaintiff was employed by the Chevrolet-Saginaw Grey Iron Foundry Division of General Motors Corporation from 1946 until January 2, 1961. He was hospitalized for silico-tuberculosis from January 10, 1961, until June 22, 1962.

The plaintiff was bedridden for most of his hospital stay. When he began to ambulate under his own power in the months before his discharge, he experienced severe cramps in his legs. This pain has continued up until the present time, making it impossible for him to walk more than a few blocks at a time without stopping to rest.

From 1961 until 1967 the plaintiff's employer paid workmen's compensation benefits at the rate of $33 per week. On February 19, 1967, payments were terminated because the aggregate of all pay-

---

[1] Replaced by MCLA 418.361(2)(g); MSA 17.237(361)(2)(g).

[2] Replaced by MCLA 418.351 through MCLA 418.359; MSA 17.237(351) through (359). The language of former MCLA 412.9 pertinent to this appeal is now contained in MCLA 418.521(2); MSA 17.237(521)(2).

[3] Replaced by MCLA 418.411 and 415; MSA 17.237(411) and (415).

ments then exceeded the $10,500 limitation of the then-effective MCLA 417.4; MSA 17.223.

On December 21, 1971, plaintiff petitioned for a hearing on his eligibility for permanent disability payments on the ground that he had suffered a work-related injury resulting in the total and permanent loss of the industrial use of both legs. At the hearing plaintiff testified that since 1962 he had experienced cramps and pains in his legs, calves and knees whenever he attempted to walk. Moving about on his feet for any length of time was also made extremely difficult due to shortness of breath:

"I can't do nothing but—if I get up and walk from here to that door out there I got to stop, my breath gets short. That's the reason I didn't go back to work when I got out of the hospital, my breath was short."

Dr. Helen Winkler, the medical witness testifying at the hearing, attributed the plaintiff's difficulties with his legs to "pulmonary problems" and "respiratory insufficiency". She then explained how a lung disease may affect the lower extremities:

"There's actually several mechanisms. Number one, just the mere fact that he's using an awful lot of energy just to breathe period. I mean, he's consuming his energy. Number two, he's probably not oxygenating his blood as well as a normal person, so consequently * * * he cannot do as much work without oxygen to his legs.

"Number three, because of his pulmonary disease and the scarring and the bronchial obstruction that can occur with silico-tuberculosis, when he exerts himself in any manner he has to hyperventilate in order to produce or in order to get enough oxygen into his blood to do what little exertion he is doing. In hyperventilating, then he blows off some carbon dioxide and he can

develop a change in the acid base balance of his blood, and we call this respiratory alkalosis. When you get into respiratory alkalosis, then the ionic calcium in the blood is reduced, and then this can cause leg cramps and fatigue and weakness. So that these would be your mechanisms, increased work required to breathe, lack of oxygen, and change in acid base affecting muscular functioning."

The hearing referee found that since June of 1962 the plaintiff had suffered the loss of industrial use of both lower extremities as a result of silico-tuberculosis, that Chevrolet-Saginaw had paid all weekly benefits required by MCLA 417.4, *supra,* and that the Second Injury Fund must therefore begin making payments in accordance with MCLA 412.9, *supra.* This decision was affirmed by the Workmen's Compensation Appeal Board on the ground that the plaintiff had "lost the industrial use of his legs within the meaning of Part II, Sec. 10(b) of the Act [MCLA 412.10(b), *supra,]* as a result [of] his employment with defendant".

A discussion of § 10(b)(7), as it existed in 1962, and as it has been judicially interpreted since then, will help focus the conflict present in the statutory scheme as it then existed. That section defined "total and permanent disability" in terms of seven specific physical disabilities,[4] one of them

---

[4] MCLA 412.10(b); MSA 17.160(b), provided, in full:

"(b) Total and permanent disability, compensation for which is provided in section 9, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 or the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both

being the "permanent and total loss of industrial use of both legs * * * ." Compensation is provided for such a disability under MCLA 412.9.

It is now the law that one may establish entitlement to "total and permanent" benefits under MCLA 418.521(1); MSA 17.237(521)(1) (formerly MCLA 412.9, *supra)* without proving a direct injury to either leg. *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970). Where disabling symptoms present in a part of the body other than the lower extremities are triggered or aggravated by leg movement and it is this "non-leg, but leg-connected" pathology which prevents the use of the legs in industry, then the worker has established the right to recover for total and permanent disability even though the symptoms are also triggered by other causes. *Lockwood, supra,* pp 602–603, 606–607. These symptoms may exist in the form of a bladder disorder,[5] vertigo precipitated by leg movement,[6] a work-related heart condition which prevents the use of the leg,[7] or even a disabling condition in only one of the legs.[8]

Why then, asks Buster McKenna, should a silicosis victim be treated differently from one whose legs are rendered industrially useless by a heart, bladder or hearing condition?

---

hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

[5] *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963).

[6] *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970).

[7] *Drake v Norge Division, Borg-Warner Corp,* 48 Mich App 88; 210 NW2d 131 (1973), *Crosby v Sterner Sheet Metal & Roofing Co,* 51 Mich App 311; 214 NW2d 868 (1974).

[8] *Burke v Ontonagon County Road Commission,* 391 Mich 103; 214 NW2d 797 (1974).

It must be preeminently recognized that the *Paulson*-to-*Burke* line of cases does not solve our problem. None of these decisions dealt with the compensation limitations for disability due to silicosis, MCLA 417.4, *supra,* and it has never been held that total and permanent disability under MCLA 412.10(b), compensation for which is provided in MCLA 412.9, is established by showing the loss of industrial use of the legs *resulting from silicosis.* Therefore, these cases are helpful in determining the existence of such disability when it is clear that that statute (MCLA 412.10[b]) applies. It is not clear that the statute should be applied in the instant case and therefore those cases are simply not controlling.

The defendant relies principally on MCLA 417.4; MSA 17.223, which provides:

"Compensation shall not be payable for partial disability due to silicosis or other dust disease. *In the event of temporary or permanent total disability or death from silicosis or other dust disease, notwithstanding any other provisions of this act, compensation shall be payable under this part to employees or to their dependents in the following manner and amounts:* If disablement or death occurred during the first calendar month in which Act No. 61 of the Public Acts of 1937 became effective not exceeding the sum of $600.00; if disablement or death occurred during the second calendar month after such act became effective not exceeding the sum of $700.00; thereafter the total compensation and benefits payable for disability and death shall increase at the rate of $100.00 each calendar month. The aggregate amount payable shall be determined by the total amount payable in the month in which disablement or death occurs. In no event shall such compensation exceed an aggregate total of $10,500.00: * * * ". (Emphasis supplied.)

In the absence of MCLA 412.10(b)(7), application of

which leads to a conflicting result, the law would be clear: Whenever permanent total disability occurs as a result of silicosis, compensation is to be paid under "this part" and in "no event" shall the aggregate amount paid exceed $10,500. The Legislature further provided, however, that compensation should be paid under Part VII to a claimant disabled from silicosis *"notwithstanding any other provisions of this act"*.

This last quoted language alone does not automatically render inapplicable MCLA 412.10(b)(7), but for several reasons we hold that compensation for total and permanent disability due to silicosis (where the dispute involves the statutes presently under discussion) is to be governed by MCLA 417.4. Our Supreme Court in *Matuz v Campbell, Wyant and Cannon Foundry Co,* 345 Mich 139; 75 NW2d 890 (1956), resolved a conflict between MCLA 417.4 and the first part of MCLA 412.9 (as it existed in 1945), and indicated that while some of the payment provisions of Part II of the statute may apply to silicosis cases, MCLA 417.4 (which then provided for a $4,000 limitation) dictates the *maximum* aggregate total of payments to be made in such cases.

The issue of whether a silicosis victim could claim total and permanent disability benefits under MCLA 412.9 was not before the court.

In *Evanston YMCA Camp v State Tax Commission,* 369 Mich 1, 8; 118 NW2d 818 (1962), the Supreme Court adopted the following rule of statutory construction:

"Where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such

cases within its general language as are not within the
provisions of the particular provision." 50 Am Jur,
Statutes, § 367, p 371. See also *Minor Child v State
Health Commissioner,* 16 Mich App 128, 131; 167 NW2d
880 (1969).

In the instant case both MCLA 412.10(b) and
MCLA 417.4 are fairly specific provisions. But the
latter section deals particularly and singularly
with any "temporary or permanent total disability
or death from silicosis or other dust disease",
whereas total and permanent disability by virtue
of loss of industrial use of the legs may be estab-
lished by proving many different kinds of pathol-
ogy. See *Paulson to Burke.* MCLA 417.4 therefore
controls the other section in silicosis cases and
limits the aggregate amount of compensation to
$10,500.

The same reasoning may be applied to the lan-
guage of MCLA 412.9[9] which entitles "any perma-
nently and totally disabled person as defined in
this act" to certain benefits from the Second Injury

[9] MCLA 412.9; MSA 17.159, provides, in pertinent part: "Any
permanently and totally disabled person as defined in this act who, on
or after June 25, 1955, is entitled to receive payments of workmen's
compensation under this act in amounts per week of less than is
presently provided in the workmen's compensation schedule of bene-
fits for permanent and total disability and for a lesser number of
weeks than the duration of such permanent and total disability shall
after the effective date of any amendatory act, by which his disability
is defined as permanent and total disability or by which the weekly
benefit for permanent and total disability is increased, receive weekly,
without application, from the second injury fund, an amount equal to
the difference between what he is now or shall hereafter be entitled
to receive from his employer under the provisions of this act as the
same was in effect at the time of his injury and the amount now
provided for his permanent and total disability by this or any other
amendatory act with appropriate application of the provisions of
paragraphs (b), (c), (d) and (e) of this section since the date of injury.
Payments from this second injury fund shall continue after the period
for which any such person is otherwise entitled to compensation
under this act for the duration of such permanent and total disability
according to the full rate provided in the schedule of benefits.

Fund to supplement benefits already being received. MCLA 417.4 is the more specific section, and its compensation ceiling governs.

"We may in the construction of an ambiguous statute [or conflicting sections thereof] look to the result of the construction to aid us in determining legislative intent." *Magnuson v Kent County Board of Canvassers,* 370 Mich 649, 657; 122 NW2d 808 (1963). Our construction is harmonious with the historical distinction between silicosis and other disablements in general, see *Felcoskie v Lakey Foundry Corp,* 382 Mich 438; 170 NW2d 129 (1969), and the constitutionality of the $10,500 limitation of MCLA 417.4 in particular. See *McDaniel v Campbell, Wyant & Cannon Foundry,* 367 Mich 356; 116 NW2d 835 (1962), *cert den* 371 US 968; 83 S Ct 551; 9 L Ed 2d 538 (1963), and *Gauthier v Campbell, Wyant & Cannon Foundry,* 360 Mich 510; 104 NW2d 182 (1960). The deferential legislative treatment is abundantly recounted in the cited cases and need not be reiterated here. The following excerpt from *Felcoskie,* p 445, captures the intent of the Legislature in making this distinction:

"The 1937 amendment [1937 PA 61, which added Part VII to the Act and provided for a schedule of occupational diseases, including silicosis as a result of mining] was intended to allow recovery for certain forms of industrial diseases and conditions, and the intent of section 4 of that amendment was to limit the amount of recovery for the most prevalent forms of dust diseases.

\* \* \*

"This leads us to the conclusion that what the legislature feared in 1937 were the diseases which could swamp an industry—silicosis, phthisis, and pneumoconiosis—and that fear continued in 1943 as it does to this day. The fact that almost everyone in the mining, quarrying and grinding industries is exposed to and probably has incurred (to some extent) these diseases,

undoubtedly accounts for section 4's denial of partial disability for them and a ceiling on the amount recoverable for total disability."

Extending the *Paulson* line of cases to silicosis victims, as the Board did and as the plaintiff invites us to do also, would require us simply to ignore the very clear language of MCLA 417.4 in the face of legislative intent which impels adherence to a constitutional distinction.

We therefore reverse the order of the Workmen's Compensation Appeal Board and remand for proceedings consistent with this opinion.

ALLEN, P. J., concurred.

O'HARA, J. *(concurring).* It is with extreme reluctance that I concur in the result reached by Judge WALSH.

I do so separately because I want to record my previously expressed concern over the state of the Michigan Workmen's Compensation Act. See the concurring opinion in *Brady v Ford Motor Co,* 62 Mich App 520; 233 NW2d 631 (1975).

There is no reason in law or logic why plaintiff, who manifestly has lost the industrial use of both legs, should be treated differently from those in the same condition but not as a result of silicosis, except that the Legislature, intentionally or not, said he must. When the Legislature leaves in a statute the clear, unequivocal language found in the silicosis section that " * * *. notwithstanding any other provisions of this act, * * * In no event shall such compensation exceed an aggregate total of $10,500.00,: * * * ",[1] a court cannot very well judicially legislate it out.

Judge WALSH properly applied the rule of the specific over the general in statutory construction and I am duty bound to concur.

---

[1] MCLA 417.4: MSA 17.223.